UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YIPIT, LLC d/b/a YipitData<br><br>    Plaintiff,<br><br>v.<br><br>ZACHARY EMMETT,<br>ALEXANDER PINSKY, and<br>JOHN DOES 1-10,<br><br>    Defendants. | Case No. 24 -cv- 7854    (      ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF YIPIT'S MOTION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL**

Plaintiff Yipit, LLC d/b/a YipitData ("Yipit") respectfully submits this memorandum of law in support of its motion for leave to file under seal the following documents in support of Yipit's request for Preliminary Injunction: (1) Plaintiff's Memorandum of Law in Support of Preliminary Injunction ("Memorandum"); (2) the Declaration of Paul Pasquale ("Pasquale Declaration"), along with Exhibits 2-5 and 8-9 thereto; (3) the Declaration of Jamie Melzer ("Melzer Declaration"); and (4) Exhibits 4 and 7 to the Declaration of Laura D. Smolowe ("Smolowe Declaration"). Yipit also respectfully moves for leave to file public redacted versions of the aforementioned documents, which are being lodged contemporaneously herewith and redact only the portions highlighted in the non-public versions that are being lodged conditionally under seal.

**PRELIMINARY STATEMENT**

Yipit filed this lawsuit against Defendants Zachary Emmett and Alexander Pinsky, former employees of Yipit, and John Does 1-10 (collectively, "Defendants") to, among other things, enjoin them from further trade secret misappropriation, and require them to return of

3

Yipit's proprietary, confidential, and trade secret information. As described in Yipit's Complaint and Memorandum, Defendants improperly acquired or disclosed Yipit's confidential and trade secret information and used it for their personal gain and for the benefit of a direct competitor. Yipit respectively moves to seal limited portions of the Memorandum; the Pasquale Declaration, along with Exhibits 2-5 and 8-9 thereto; the Melzer Declaration; and Exhibits 4 and 7 to the Smolowe Declaration. These filings in support of Yipit's request for Preliminary Injunction contain non-public, commercially sensitive information—including misappropriated confidential and trade secret information and other business confidential information—disclosure of which could negatively impact Yipit's business and competitive standing. Courts in this District have permitted commercially sensitive information to be sealed, including technical and commercial trade secrets, confidential information about business and personnel operations, and proprietary data security measures. *See, e.g.*, *Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (affirming holding that a party's "interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access"); *FuboTV Inc. v. Walt Disney Co.*, No. 24-CV-1363 (MMG), 2024 WL 1884974, at *1 (S.D.N.Y. Apr. 23, 2024) (granting motion to seal memorandum of law in support of motion for preliminary injunction and accompanying declarations because "[t]he documents . . . to be filed under seal and in redacted form contain commercially sensitive and confidential business information"); *Kewazinga Corp. v. Microsoft Corp.*, No. 18-CV-4500 (GHW), 2021 WL 1222122, at *3 (S.D.N.Y. Mar. 31, 2021) ("Courts commonly find that documents that contain trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like satisfy the sealing standard.") (citation omitted); *Rodo Inc. v. Guimaraes*, No. 22-CV-9746 (VSB), 2022 WL

17742392, at *1 (S.D.N.Y. Dec. 5, 2022) ("[C]ourts have consistently found that confidential commercial information of a business—including confidential research, internal business documents and information about a business's operations are the proper subject of sealing.") (citation omitted); *Johnson v. L'Oreal USA*, No. 18-CV-9786 (JPC), 2021 WL 1191443, at *1 (S.D.N.Y. Mar. 30, 2021) ("A party's interest in preserving competitively sensitive business operations is an example of the type of confidential information that merits sealing.") (citation omitted); *DoorDash, Inc. v. City of New York*, No. 21-CV-7695 (AT), 2024 WL 4285682, at *4 (S.D.N.Y. Sept. 24, 2024) (granting motion to seal "exhibits containing information about Plaintiffs' data security practices").

## BACKGROUND

Yipit is a leading market research firm that specializes in identifying, analyzing, and selling "alternative data."  Unlike traditional data obtained from conventional sources, such as corporate disclosures and financial reports, alternative data derives from non-traditional sources, such as credit card data, consumer receipts, mobile device data, social media data, and web scraping.  The bulk of Yipit's customers are investment companies, including financial institutions, hedge funds, private equity firms, and mutual funds, who use Yipit's products to gain actionable insights about potential investments and make smarter investment decisions. Yipit also serves major corporate clients in a wide range of industries, providing them with data products designed to increase their own market share, sales, and customer bases.

On October 16, 2024, Yipit filed its Complaint and request for Preliminary Injunction. As explained more fully in the Complaint and the Memorandum, Yipit is in a highly competitive industry, and Defendants' continued possession or use of Yipit's confidential and trade secret

information, if not promptly stopped, will cause Yipit to incur irreversible and immeasurable competitive injury, including loss of customers, goodwill, and reputation.

The Memorandum, certain supporting declarations, and certain supporting exhibits contain non-public, commercially sensitive information, including (a) Yipit's confidential and trade secret information concerning customers, including subscription and pricing details, contract renewal dates, and Yipit's assessments and strategies for specific customer accounts; (b) Yipit's confidential information regarding its business and personnel operations; and (c) proprietary details about Yipit's data security measures. Yipit takes great pains to protect all of this confidential and trade secret information from disclosure, including through sophisticated technical and physical security measures, robust data use policies, regular employee trainings, and mandatory confidentiality agreements.

Accordingly, Yipit files this motion to protect its commercially sensitive confidential and trade secret information from public disclosure by permitting Yipit to file such information under seal.

## ARGUMENT

While a presumption of public access ordinarily attaches to judicial documents, sealing such documents can be justified when necessary to protect countervailing interests, such as the need to protect a business's commercially sensitive and confidential business information. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). To determine whether sufficient cause exists for a document to be filed under seal, this Court engages in a three-step inquiry. *See Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). "First, the court determines whether the record at issue is a 'judicial document'—a document to which the presumption of public access attaches." *Id*. If so, "the court proceeds to 'determine the weight

of the presumption of access' to that document." *Id*. (citation omitted). "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id*. In making these determinations, the Court "enjoys considerable discretion" in deciding whether sufficient reasons "exist[] to overcome the presumption of open access to documents filed in courts." *Geller v. Branic Intern. Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000). Yipit's motion to seal easily meets this standard and should be granted because Yipit's interests in maintaining the confidentiality of the information in question outweigh any right of public access.

Under the first step, the documents that Yipit asks to seal are judicial documents that contain information relevant to Yipit's claims. However, under the second step, the weight of the presumption of access to those documents is "relatively low" because Yipit's publicly-filed documents (including its Complaint and the proposed redacted versions of the Memorandum, declarations, and exhibits in support of Yipit's request for Preliminary Injunction) include high-level, unredacted descriptions of the types of information that was misappropriated and the types of data security measures that Yipit has in place. It is only the documents (or portions thereof) containing specific, competitively sensitive confidential and trade secret information that Yipit seeks to seal. *See Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441 (HG) (TAM), 2022 WL 3347219, at *3 (E.D.N.Y. Aug. 12, 2022) (concluding that "the weight of the presumption of access" to certain documents was "relatively low" where the movants publicly disclosed high-level descriptions of the information contained in those documents and sought to seal only specific references to confidential "number[s], names, and details" in the documents).

Finally, under the third step, Yipit's interest in maintaining the confidentiality of its non-public, commercially sensitive information greatly outweighs the presumption of access to the

documents in question.  *See Kewazinga*, 2021 WL 1222122, at *3 ("Courts commonly find that documents that contain trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like satisfy the sealing standard.") (citation omitted).  As discussed in more detail below, Yipit would be competitively harmed if its confidential information were publicly revealed.

First, the Memorandum; the Pasquale Declaration, along with Exhibits 8-9 thereto; the Melzer Declaration; and Exhibits 4 and 7 to the Smolowe Declaration include confidential and trade secret information regarding Yipit's products (including data sources and methodologies) and customers (including subscriptions details, contract pricing, renewal dates, account managers, account health assessments, "churn scores" quantifying the risk of non-renewal, and account strategies).  Yipit's investor customers—the type of customers that Defendants were responsible for—are not publicly disclosed.  Indeed, investors often guard the sources of their information to prevent competitors from gaining similar insights, so Yipit has a contractual obligation to many investor customers to protect even the fact of the customer's receipt of Yipit's products as the customer's confidential information.  Confidential information about Yipit's customers, individually or as compilations, cannot be readily derived from any general industry knowledge or publicly available sources.  Such information provides competitors with "valuable insights into a company's current business practices" that they could exploit, so it warrants sealing.  *See Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998); *Personalized Media Commc'ns, LLC v. Netflix, Inc.*, 20-CV-03708, 2020 U.S. Dist. LEXIS 218085, at *6 (S.D.N.Y. Nov. 20, 2020) (granting defendant's motion to seal defendant's "highly confidential, competitively sensitive information," after applying the three-step *Lugosch* standard).  As courts have properly held, the "[p]otential damage from

release of trade secrets is a legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd.,* 26 F. Supp. 2d at 612; *see, e.g.*, *FuboTV*, 2024 WL 1884974, at *1 (granting motion to seal documents containing "commercially sensitive and confidential business information," including documents concerning "agreements with Defendants and proprietary financial analyses, marketing data, and business strategies"); *Hypnotic Hats, Ltd. v. Wintermantel Enter., LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (granting motion to seal "customer lists and other identifying information for [the movant's] customers").

Second, the Memorandum; the Pasquale Declaration, along with Exhibits 3 and 9 thereto; and the Melzer Declaration contain confidential information regarding Yipit's business and personnel operations, including employee agreements, personnel training records, and employee compensation. That information is not publicly known, and its disclosure would harm Yipit's competitive standing by revealing critical details about Yipit's operations and practices for recruiting, training, and retaining employees. Moreover, much of that information discloses sensitive personal information. Courts have concluded that documents disclosing this type of information may be filed under seal. *See, e.g.*, *Johnson*, 2021 WL 1191443, at *1 ("A party's interest in preserving competitively sensitive business operations is an example of the type of confidential information that merits sealing.") (citation omitted); *Rodo*, 2022 WL 17742392, at *1 ("[C]ourts have consistently found that confidential commercial information of a business— including confidential research, internal business documents and information about a business's operations are the proper subject of sealing.") (citation omitted); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (granting motion to seal documents containing information about employee compensation).

Third, the Memorandum and the Pasquale Declaration, along with Exhibits 2 and 4-5 thereto, contain proprietary and confidential details concerning Yipit's data security measures, including confidential internal guidance; incident response strategies; specific features it uses in its data security software; what data it is able to collect; and how that data is collected. These details reveal confidential aspects of Yipit's security capabilities and strategies and would provide information to allow bad actors to bypass or render ineffective Yipit's security measures. Given these considerations, the balance of the public interest in disclosure as compared with the harm of disclosure weighs heavily in favor of sealing. *See, e.g.*, *DoorDash*, 2024 WL 4285682, at *4 (granting motion to seal "exhibits containing information about Plaintiffs' data security practices"); *Berlin v. Airways*, No. 18-CV-1545 (EK) (LB), 2020 WL 3868707, at *1 (E.D.N.Y. July 9, 2020) (granting motion to seal documents that reveal records relating to a business's security practices and its internal incident response and reporting practices).

Accordingly, Yipit has a compelling interest in protecting its competitively sensitive confidential and trade secret information. That interest heavily outweighs the presumption of public access that normally attaches to judicial documents. This is especially true because Yipit's motion to seal is narrowly tailored to preserve the public's interest in access to documents. Not only is Yipit's motion limited to those documents (or portions thereof) that disclose specific, competitively sensitive confidential and trade secret information, Yipit has contemporaneously lodged redacted versions of the Memorandum; the Pasquale Declaration, along with Exhibits 2-5 and 8-9; the Melzer Declaration; and Exhibits 4 and 7 to the Smolowe Declaration that redact only the portions highlighted in the non-public versions that are being lodged conditionally under seal, leaving unredacted all non-confidential facts. *See, e.g.*, *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 608 (S.D.N.Y. 2022) (granting motion to seal

10

because "release of the information contained in the [document] could cause competitive harm to Defendants, and because the proposed redactions are narrowly tailored to protect only this sensitive business information"); *KeyBank Nat'l Assn. v. Element Transp. LLC*, No. 16-CV-8958, 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017) (granting motion to seal where the movant "narrowly tailored their redactions, strictly limiting them to the portions of the [document]" containing confidential information); *Leonard as Trustee of Poplawski 2008 Ins. Tr. v. John Hancock Life Ins. Co.*, No. 18-CV-4994 (AKH), 2020 WL 1547486, at *1 (S.D.N.Y. Mar. 31, 2020) (same); *see also Lugosch*, 435 F.3d at 124 (stating that sealing a document is appropriate where "sealing is necessary to preserve higher values" and "the sealing order is narrowly tailored to achieve that aim").

## CONCLUSION

For the reasons set out above, Yipit respectfully requests that the Court enter an order directing that Memorandum, the Pasquale Declaration and Exhibits 2-5 and 8-9 thereto, the Melzer Declaration, and Exhibits 4 and 7 to the Smolowe Declaration, may remain under seal and that Yipit may file redacted public versions of those documents as delineated above.

<table>
<tr><td>Dated: October 16, 2024<br>White Plains, NY</td><td>YANKWITT LLP<br><br>By: _____<br>Russell M. Yankwitt<br>Michael H. Reed<br>140 Grand Street, Suite 501<br>White Plains, New York 10601<br>Tel.: (914) 686-1500<br>*Attorneys for Plaintiff*<br>*(Local Counsel)*<br><br>MUNGER, TOLLES & OLSON LLP<br>Laura D. Smolowe<br>*Pro hac vice application pending*<br>Vincent D. Ling<br>*Pro hac vice application pending*<br>Jennifer L. Bryant<br>*Pro hac vice application pending*<br>Taylor L. Benninger<br>*Pro hac vice application pending*<br>Matthew Miyamoto<br>*Pro hac vice application pending*<br>350 South Grand Avenue<br>Fiftieth Floor<br>Los Angeles, California 90071-3426<br>Tel: (213) 683-9100<br>*Attorneys for Plaintiff*<br>*(Lead Counsel)*</td></tr>
</table>