# EXHIBIT 2

# MUNGER, TOLLES & OLSON LLP

350 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100

---

560 MISSION STREET
SAN FRANCISCO, CALIFORNIA 94105-3089
TELEPHONE (415) 512-4000

---

601 MASSACHUSETTS AVENUE NW
SUITE 500E
WASHINGTON, D.C. 20001-5369
TELEPHONE (202) 220-1100

July 15, 2024

Writer's Direct Contact
(213) 683-9113
laura.smolowe@mto.com

*Via E-mail and FedEx*

Mr. Zachary Emmett
2343 Runyon Ct.
Point Pleasant, New Jersey 08742
zacharyemmett92@gmail.com

    Re:    *Yipit Demand to Cease and Desist and Return Proprietary Information*

Dear Mr. Emmett:

    We have been engaged as litigation counsel for Yipit, LLC d/b/a YipitData ("Yipit"). We write to remind you of your important, continuing obligations to Yipit, and to raise serious concerns about your conduct before your departure from Yipit and in your current position with M Science LLC ("M Science"), a direct competitor of Yipit.

    As a former Yipit employee, you have an ongoing obligation to protect Yipit's trade secret, proprietary, and confidential information. When you began your employment with Yipit, you signed a Proprietary Information, Inventions, and Non-Solicitation Agreement, wherein you agreed that: "At all times during [your] employment and thereafter, [you] will hold in strictest confidence and will not disclose, use, lecture upon or publish any of [Yipit's] Proprietary Information." Exhibit A, § 1.1. This means that you may not use or share any of Yipit's confidential information—such as Yipit's "trade secrets" or "information regarding

MUNGER, TOLLES & OLSON LLP

Mr. Zachary Emmett
July 15, 2024
Page 2

[Yipit's] customers and potential customers," Exhibit A, § 1.2—for any purpose aside from your work with Yipit. This obligation remains in full force even though you no longer work for Yipit.

In the same Agreement, you promised that, "for the one (1) year period after the date [your] employment ends," you would not "solicit, induce, encourage, or participate in soliciting, inducing, or encouraging any employee of [Yipit] to terminate his or her relationship with [Yipit]," nor would you directly or indirectly "attempt to hire, employ, or engage in business with any person employed by [Yipit]." Exhibit A, § 5. In other words, you agreed that you would not encourage any Yipit employees to leave Yipit or attempt to hire such employees on behalf of another company. This prohibition lasts for a year after your departure from Yipit, that is, until June 17, 2025.

The same Agreement further required you to return Yipit property, including all copies of materials containing Yipit's confidential information, upon your departure. Exhibit A, § 8. Not only that, you signed an Acknowledgement and Attestation Form, wherein you "acknowledge[d] [your] continuing obligations to maintain the confidentiality of YipitData's confidential, non-public information." Exhibit B at 1. You certified that you had "returned and/or deleted all documents, files, records, data, equipment, and other items" from Yipit that you had in your possession. Exhibit B at 1. You further agreed that, if you ever discovered additional Yipit property or data in your possession, you would "return or delete" it within "ten (10) days after making such discovery." Exhibit B at 1.

We have reason to believe that you have failed to abide by these critical obligations. We have learned that, in the lead-up to your departure, you transferred Yipit's confidential and proprietary information, including Yipit trade secrets, to your personal accounts on LinkedIn and Facebook. Certain exfiltrated files appear to have been deliberately renamed to conceal their confidential nature. The information in question is highly sensitive and relates to, among other things:

- Yipit's customers, including their identities, contract terms, product subscriptions, renewal dates, and annual spending;

- Yipit's products, including its proprietary methodology, product pricing and discounts, specific product offerings, and data product reporting; and

- Yipit's strategic information, including strategic client analyses, future plans, and pricing strategy.

In addition, Yipit has reason to believe that you have been communicating with current Yipit employees and admonishes you to comply with your non-solicit obligations.

Your conduct constitutes material breaches to your contractual obligations as well as violations of your fiduciary duties to Yipit. Yipit reserves all rights to take appropriate legal

MUNGER, TOLLES & OLSON LLP

Mr. Zachary Emmett
July 15, 2024
Page 3

action, including but not limited to seeking relief from a court of competent jurisdiction to protect its proprietary information and enforce its contracts, and reporting your conduct to law enforcement.

In light of the foregoing, we demand that you **take the following steps within 10 days of your receipt of this letter**:

(1) Conduct a thorough search of your accounts (including but not limited to your Facebook and LinkedIn accounts), your hard copy files, and your electronic devices for documents, data, and information belonging to Yipit, and return all copies of such documents, data, and information to undersigned counsel;

(2) Provide undersigned counsel with a comprehensive list containing (a) the names of any persons or businesses to whom you disclosed (whether in writing or verbally) Yipit trade secret, confidential or proprietary information, (b) a description of all the information and documents provided to each such person or business, and (c) the date on which you provided such information.

(3) Sign the certification, attached as Exhibit C, swearing under oath that you possess no additional trade secret, confidential, or proprietary information from Yipit, and return it to undersigned counsel;

(4) Provide undersigned counsel with a timeline of your communications with M Science regarding your prospective and actual employment, including the dates on which you (a) first communicated with M Science regarding potential employment, (b) interviewed for a position at M Science, (c) received an offer of employment from M Science, (d) accepted an offer of employment from M Science, and (e) commenced employment with M Science; and

(5) Provide undersigned counsel with a comprehensive list containing (a) the names of any Yipit employees with whom you have had contact since your departure, (b) the date(s) of such contact, and (c) the nature of that contact.

We also demand that you *cease and desist any efforts to solicit current Yipit employees* to leave Yipit or to work for a competitor, including M Science, and that you comply with your contractual obligations.

Finally, this letter also serves as a *preservation notice*. You have a legal obligation to preserve and not alter any evidence you have. Except for the purposes of searching and returning Yipit documents, as specified above, *do not access, alter, or delete* any Yipit information or documents, and *do not use or disclose any confidential information* contained within those documents.

MUNGER, TOLLES & OLSON LLP

Mr. Zachary Emmett
July 15, 2024
Page 4

   If you have legal counsel, we urge you to promptly provide this letter to them. Alternatively, you may provide us with their contact information, and we will correspond with your legal counsel directly. We are also notifying M Science of our concerns and are asking them to conduct their own investigation. Nothing contained herein is intended to waive any of Yipit's rights, all of which are expressly reserved.

              Respectfully,

              Laura D. Smolowe
              Vincent Y. Ling

              *Counsel for Yipit*

Encls.
- Exhibit A (Proprietary Information, Inventions, and Non-Solicitation Agreement, signed Aug. 6, 2019)
- Exhibit B (Acknowledgement and Attestation Form, signed June 17, 2024)
- Exhibit C (Certification of No Materials and Compliance with Ongoing Obligations)

# EXHIBIT A

# PROPRIETARY INFORMATION, INVENTIONS AND NON-SOLICITATION AGREEMENT

In consideration of my employment or continued employment by **Yipit, LLC.**, its subsidiaries, parents, affiliates, successors and assigns (together, the "**Company**") and the compensation now and hereafter paid to me, I hereby enter into this Proprietary Information, Inventions and Non-Solicitation Agreement (the "**Agreement**") and agree as follows:

1. **NONDISCLOSURE**.

    **1.1 Recognition of Company's Rights; Nondisclosure.** I understand and acknowledge that my employment by the Company creates a relationship of confidence and trust with respect to the Company's Proprietary Information (defined below) and that the Company has a protectable interest therein. At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information, except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing. I will obtain the Company's written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to my work at the Company and/or incorporates any Proprietary Information. I hereby assign to the Company any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the sole property of the Company and its assigns. I will take all reasonable precautions to prevent the inadvertent or accidental disclosure of Proprietary Information.

    **1.2 Proprietary Information.** The term "**Proprietary Information**" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company, its affiliates, parents and subsidiaries, whether having existed, now existing, or to be developed during my employment. By way of illustration but not limitation, "**Proprietary Information**" includes (a) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques and any other proprietary technology and all Proprietary Rights therein (hereinafter collectively referred to as "**Inventions**"); (b) information regarding research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, margins, discounts, credit terms, pricing and billing policies, quoting procedures, methods of obtaining business, forecasts, future plans and potential strategies, financial projections and business strategies, operational plans, financing and capital-raising plans, activities and agreements, internal services and operational manuals, methods of conducting Company business, suppliers and supplier information, and purchasing; (c) information regarding customers and potential customers of the Company, including customer lists, names, representatives, their needs or desires with respect to the types of products or services offered by the Company, proposals, bids, contracts and their contents and parties, the type and quantity of products and services provided or sought to be provided to customers and potential customers of the Company and other non-public information relating to customers and potential customers; (d) information regarding any of the Company's business partners and their services, including names; representatives, proposals, bids, contracts and their contents and parties, the type and quantity of products and services received by the Company, and other non-public information relating to business partners; (e) information regarding personnel, employee lists, compensation, and employee skills; and (f) any other non-public information which a competitor of the Company could use to the competitive disadvantage of the Company. Notwithstanding the foregoing, it is understood that, at all such times, I am free to use information which is generally known in the trade or industry through no breach of this agreement or other act or omission by me, and I am free to discuss the terms and conditions of my employment with others to the extent permitted by law.

    **1.3 Third Party Information.** I understand, in addition, that the Company has received and in the future will receive from third parties their confidential and/or proprietary knowledge, data, or information ("**Third Party Information**"). During my employment and thereafter, I will hold Third Party Information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use, except in connection with my work for the Company, Third Party Information

1

unless expressly authorized by an officer of the Company in writing.

**1.4 Term of Nondisclosure Restrictions.** I understand that Proprietary Information and Third Party Information is never to be used or disclosed by me, as provided in this Section 1. If, however, a court decides that this Section 1 or any of its provisions is unenforceable for lack of reasonable temporal limitation and the Agreement or its restriction(s) cannot otherwise be enforced, I agree and the Company agrees that the two (2) year period after the date my employment ends shall be the temporal limitation relevant to the contested restriction, provided, however, that this sentence shall not apply to trade secrets protected without temporal limitation under applicable law.

**1.5 No Improper Use of Information of Prior Employers and Others.** During my employment by the Company I will not improperly use or disclose any confidential information or trade secrets, if any, of any former employer or any other person to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person.

**1.6 Notice of Immunity Under the Economic Espionage Act of 1996, as amended by the Defend Trade Secrets Act of 2016 ("DTSA").** Notwithstanding any other provision of this Agreement, I acknowledge: (i) I will not be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that: (A) is made: (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (2) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding; (ii) if I file a lawsuit for retaliation by the Company for reporting a suspected violation of law, I may disclose the Company's trade secrets to the Company's attorney and use the trade secret information in the court proceeding if I: (A) file any document containing the trade secret under seal; and (B) do not disclose the trade secret, except pursuant to court order.

**2. ASSIGNMENT OF INVENTIONS.**

**2.1 Proprietary Rights.** The term "**Proprietary Rights**" shall mean all trade secrets, patents, copyrights, trade marks, mask works and other intellectual property rights throughout the world.

**2.2 Prior Inventions.** Inventions, if any, patented or unpatented, which I made prior to the commencement of my employment with the Company are excluded from the scope of this Agreement. To preclude any possible uncertainty, I have set forth on *Exhibit A* (Previous Inventions) attached hereto a complete list of all Inventions that I have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to the commencement of my employment with the Company, that I consider to be my property or the property of third parties, and that I wish to have excluded from the scope of this Agreement (collectively referred to as "**Prior Inventions**"). If disclosure of any such Prior Invention would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Prior Inventions in *Exhibit A* but am only to disclose a cursory name for each such invention, a listing of the party(ies) to whom it belongs and the fact that full disclosure as to such inventions has not been made for that reason. A space is provided on *Exhibit A* for such purpose. If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process or machine, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, fully-paid, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, make derivative works of, publicly perform, publicly perform, use, sell, import, and exercise any and all present and future rights in such Prior Invention. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

**2.3 Assignment of Inventions.** Subject to Subsections 2.4 and 2.6, I hereby assign and agree to assign in the future (when any such Inventions or Proprietary Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to the Company all my right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect thereto) whether or not patentable or

registrable under copyright or similar statutes, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment with the Company. Inventions assigned to the Company, or to a third party as directed by the Company pursuant to this Section 2, are hereinafter referred to as "**Company Inventions**."

**2.4 Unassigned or Nonassignable Inventions.** I recognize that this Agreement will not be deemed to require assignment of any Invention that I developed entirely on my own time without using the Company's equipment, supplies, facilities, trade secrets, or Proprietary Information, except for those Inventions that either (i) relate to the Company's actual or anticipated business, research or development, or (ii) result from or are connected with work performed by me for the Company. In addition, this Agreement does not apply to any Invention which qualifies fully for protection from assignment to the Company under any specifically applicable state law, regulation, rule, or public policy ("**Specific Inventions Law**").

**2.5 Obligation to Keep Company Informed.** During the period of my employment and for six (6) months after termination of my employment with the Company, I will promptly disclose to the Company fully and in writing all Inventions authored, conceived or reduced to practice by me, either alone or jointly with others. In addition, I will promptly disclose to the Company all patent applications filed by me or on my behalf within a year after termination of employment. At the time of each such disclosure, I will advise the Company in writing of any Inventions that I believe fully qualify for protection under the provisions of a Specific Inventions Law; and I will at that time provide to the Company in writing all evidence necessary to substantiate that belief. The Company will keep in confidence and will not use for any purpose or disclose to third parties without my consent any confidential information disclosed in writing to the Company pursuant to this Agreement relating to Inventions that qualify fully for protection under a Specific Inventions Law. I will preserve the confidentiality of any Invention that does not fully qualify for protection under a Specific Inventions Law.

**2.6 Government or Third Party.** I also agree to assign all my right, title and interest in and to any particular Company Invention to a third party, including without limitation the United States, as directed by the Company.

**2.7 Works for Hire.** I acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101).

**2.8 Enforcement of Proprietary Rights.** I will assist the Company in every proper way to obtain, and from time to time enforce, United States and foreign Proprietary Rights relating to Company Inventions in any and all countries. To that end I will execute, verify and deliver such documents and perform such other acts (including appearances as a witness) as the Company may reasonably request for use in applying for, obtaining, perfecting, evidencing, sustaining and enforcing such Proprietary Rights and the assignment thereof. In addition, I will execute, verify and deliver assignments of such Proprietary Rights to the Company or its designee. My obligation to assist the Company with respect to Proprietary Rights relating to such Company Inventions in any and all countries shall continue beyond the termination of my employment, but the Company shall compensate me at a reasonable rate after my termination for the time actually spent by me at the Company's request on such assistance.

In the event the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph with the same legal force and effect as if executed by me. I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have for infringement of any Proprietary Rights assigned hereunder to the Company.

**3. RECORDS.** I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that may be required by the Company) of all Proprietary Information developed by me and all Inventions made by me during the period of my employment at the Company, which records shall be available to and remain the sole property of the Company at all times.

**4. DUTY OF LOYALTY DURING EMPLOYMENT.** I agree that during the period of my employment by the Company I will not, without the Company's express written consent, directly or indirectly engage in any employment or business activity which is directly or indirectly competitive with, or would otherwise conflict with, my employment by the Company.

**5. NO SOLICITATION OF EMPLOYEES, CONSULTANTS, CONTRACTORS, OR CUSTOMERS OR POTENTIAL CUSTOMERS.** I agree that during the period of my employment and for the one (1) year period after the date my employment ends for any reason, including but not limited to voluntary termination by me or involuntary termination by the Company, I will not, as an officer, director, employee, consultant, owner, partner, or in any other capacity, either directly or through others, except on behalf of the Company:

**5.1** solicit, induce, encourage, or participate in soliciting, inducing, or encouraging any employee of the Company to terminate his or her relationship with the Company;

**5.2** hire, employ, or engage in business with or attempt to hire, employ, or engage in business with any person employed by the Company or who has left the employment of the Company within the preceding three (3) months or discuss any potential employment or business association with such person, even if I did not initiate the discussion or seek out the contact; or

**5.3** solicit, induce or attempt to induce any Customer or Potential Customer, or any consultant or independent contractor with whom I had direct or indirect contact or whose identity I learned as a result of my employment with the Company, to terminate, diminish, or materially alter in a manner harmful to the Company its relationship with the Company.

The parties agree that for purposes of this Agreement, a "*Customer or Potential Customer*" is any person or entity who or which, at any time during the one (1) year prior to the date my employment with the Company ends, (i) contracted for, was billed for, or received from the Company any product, service or process with which I worked directly or indirectly during my employment by the Company or about which I acquired Proprietary Information; or (ii) was in contact with me or in contact with any other employee, owner, or agent of the Company, of which contact I was or should have been aware, concerning any product, service or process with which I worked directly or indirectly during my employment with the Company or about which I acquired Proprietary Information; or (iii) was solicited by the Company in an effort in which I was involved or of which I was or should have been aware.

**6. REASONABLENESS OF RESTRICTIONS.**

**6.1** I agree that I have read this entire Agreement and understand it. I agree that this Agreement does not prevent me from earning a living or pursuing my career. I agree that the restrictions contained in this Agreement are reasonable, proper, and necessitated by the Company's legitimate business interests. I represent and agree that I am entering into this Agreement freely and with knowledge of its contents with the intent to be bound by the Agreement and the restrictions contained in it.

**6.2** In the event that a court finds this Agreement, or any of its restrictions, to be ambiguous, unenforceable, or invalid, I and the Company agree that the court shall read the Agreement as a whole and interpret the restriction(s) at issue to be enforceable and valid to the maximum extent allowed by law.

**7. NO CONFLICTING AGREEMENT OR OBLIGATION.** I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict herewith.

**8. RETURN OF COMPANY PROPERTY.** When I leave the employ of the Company, I will deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company. I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice. Prior to leaving, I will cooperate with the Company in completing and signing the Company's termination statement if requested to do so by the Company.

**9. LEGAL AND EQUITABLE REMEDIES.**

**9.1** I agree that it may be impossible to assess the damages caused by my violation of this Agreement or any of its terms. I agree that any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to the Company and the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach or threatened breach of this Agreement.

**9.2** I agree that if the Company is successful in whole or in part in any legal or equitable action against me under this Agreement, the Company shall be entitled to payment of all costs, including reasonable attorney's fees, from me.

**9.3** In the event the Company enforces this Agreement through a court order, I agree that the restrictions of Section 5 shall remain in effect for a period of twelve (12) months from the effective date of the Order enforcing the Agreement.

**10. NOTICES.** Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing. Such notice shall be deemed given upon personal delivery to the appropriate address or if sent by certified or registered mail, three (3) days after the date of mailing.

**11. PUBLICATION OF THIS AGREEMENT TO SUBSEQUENT EMPLOYERS OR BUSINESS ASSOCIATES OF EMPLOYEE.**

**11.1** If I am offered employment or the opportunity to enter into any business venture as owner, partner, consultant or other capacity while the restrictions described in Section 5 of this Agreement are in effect I agree to inform my potential employer, partner, co-owner and/or others involved in managing the business with which I have an opportunity to be associated of my obligations under this Agreement and also agree to provide such person or persons with a copy of this Agreement.

**11.2** I agree to inform the Company of all employment and business ventures which I enter into while the restrictions described in Section 5 of this Agreement are in effect and I also authorize the Company to provide copies of this Agreement to my employer, partner, co-owner and/or others involved in managing the business with which I am employed or associated and to make such persons aware of my obligations under this Agreement.

**12. GENERAL PROVISIONS.**

**12.1 Governing Law; Consent to Personal Jurisdiction.** This Agreement will be governed by and construed according to the laws of the State of New York as such laws are applied to agreements entered into and to be performed entirely within New York between New York residents. I hereby expressly consent to the personal jurisdiction and venue of the state and federal courts located in the State of New York for any lawsuit filed there against me by Company arising from or related to this Agreement.

**12.2 Severability.** In case any one or more of the provisions, subsections, or sentences contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

**12.3 Successors and Assigns.** This Agreement is for my benefit and the benefit of the Company, its successors, assigns, parent corporations, subsidiaries, affiliates, and purchasers, and will be binding upon my heirs, executors, administrators and other legal representatives.

**12.4 Survival.** The provisions of this Agreement shall survive the termination of my employment, regardless of the reason, and the assignment of this Agreement by the Company to any successor in interest or other assignee.

**12.5 Employment At-Will.** I agree and understand that nothing in this Agreement shall change my at-will employment status or confer any right with respect to continuation of employment by the Company, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause or advance notice.

**12.6 Waiver.** No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

**12.7 Advice of Counsel. I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.**

**12.8 Entire Agreement.** The obligations pursuant to Sections 1 and 2 (except Subsection 2.7) of this Agreement shall apply to any time during which I was previously engaged, or am in the future engaged, by the Company as a consultant if no other agreement governs nondisclosure and assignment of inventions during such period. This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

This Agreement shall be effective as of the first day of my provision of services to the Company.

**I HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND ITS TERMS. I HAVE COMPLETELY FILLED OUT EXHIBIT A TO THIS AGREEMENT.**

DocuSigned by: *[signature]* 477E09803C204C5...

**(Signature)**
Zachary Emmett

_____
**(Printed Name)**

**ACCEPTED AND AGREED TO:**

**YIPIT, LLC.**

By: DocuSigned by: *Vinicius Vacanti* 19335390CE544AB...
Name:   Vinicius Vacanti
Title:
        CEO

6

# EXHIBIT A

## PREVIOUS INVENTIONS

**TO:** Yipit, LLC.

**FROM:** Zachary Emmett

**DATE:** 8/6/2019

**SUBJECT:** Previous Inventions

**1.** Except as listed in Section 2 below, the following is a complete list of all inventions or improvements relevant to the subject matter of my employment by **Yipit, LLC.** (the "**Company**") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

☒ No inventions or improvements.

☐ See below:
N/A

☐ Additional sheets attached.

**2.** Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| | **Invention or Improvement** | **Party(ies)** | **Relationship** |
|---|---|---|---|
| 1. | N/A | N/A | N/A |
| 2. | N/A | N/A | N/A |
| 3. | N/A | N/A | N/A |

☐ Additional sheets attached.

2

# EXHIBIT B



### ACKNOWLEDGMENT AND ATTESTATION FORM

In connection with the termination of my employment with Yipit, LLC ("YipitData") on June 17, 2024 I, Zachary Emmett hereby certify that I have returned and/or deleted all documents, files, records, data, equipment, and other items provided by YipitData to me, developed in connection with my employment at YipitData, or otherwise belonging to YipitData. I hereby certify that I have also deleted or removed copies of any such files saved to personal devices. If I subsequently discover that any property or data identified above has not been returned or deleted, I agree to return or delete all such property and data as soon as practicable, but not later than ten (10) days after making such discovery.

I understand and acknowledge my continuing obligations to maintain the confidentiality of YipitData's confidential, non-public information pursuant to the terms of the YipitData Proprietary Information, Inventions and Non-Solicitation Agreement to which I am a party.

I HAVE READ THIS ACKNOWLEDGMENT AND ATTESTATION FORM AND UNDERSTAND ITS TERMS. BY SIGNING BELOW, I HEREBY CERTIFY MY COMPLIANCE WITH THE ABOVE:

_____
Zachary Emmett

Date:

90 5th Avenue, 11th floor, New York, New York 10011

# EXHIBIT C

**CERTIFICATION OF NO MATERIALS
AND COMPLIANCE WITH ONGOING OBLIGATIONS**

  I certify that I have conducted a thorough search of my accounts (including but not limited to my Facebook and LinkedIn accounts), hard copy files, and electronic devices for documents, data, or information belonging to Yipit, LLC ("Yipit").  I have returned all such documents, data, and information to counsel for Yipit.  I certify that I do not have in my possession, custody, or control, nor have I failed to return, any additional documents, data, or information belonging to Yipit.  Notwithstanding the foregoing, I understand that I may keep a copy of Yipit's personnel records relating to me.

  I further certify that I understand the terms of my Proprietary Information, Inventions, and Non-Solicitation Agreement with Yipit, including (1) my obligation to preserve in strictest confidence all Yipit Proprietary Information, as defined in that Agreement, and (2) my obligation not to solicit any Yipit employees to terminate their employment or work for another company for a period of one year following my departure from Yipit, that is, until June 17, 2025.  I certify that I am abiding by these obligations and that I will continue to do so.

  I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.


Date:  July _____, 2024      _____


            Printed Name:  _____