# EXHIBIT 4

Redacted Version

MUNGER, TOLLES & OLSON LLP

560 MISSION STREET
SAN FRANCISCO, CALIFORNIA 94105-3089
TELEPHONE (415) 512-4000

350 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100

601 MASSACHUSETTS AVENUE NW
SUITE 500E
WASHINGTON, D.C. 20001-5369
TELEPHONE (202) 220-1100

Writer's Direct Contact
(213) 683-9113
(213) 683-5113 FAX
laura.smolowe@mto.com

August 14, 2024

Andrew J. Shapren
Buchanan
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555

Via Email:
andrew.shapren@bipc.com

 *Re: Zachary Emmett*

Mr. Shapren:

 We received and reviewed your August 2, 2024, letter regarding Mr. Emmett and M Science.  While we appreciate the response, your letter unfortunately raises more questions than it answers and, in fact, contains assertions that Yipit knows to be untrue.  Indeed, Yipit's ongoing investigation continues to reveal additional alarming evidence—not only about Mr. Emmett, but also about M Science and its senior employees.

MUNGER, TOLLES & OLSON LLP

M Science
August 14, 2024
Page 2

        Since sending our initial letter, Yipit has uncovered extremely concerning evidence that Mr. Emmett repeatedly shared Yipit's trade secret, confidential, and proprietary information, including its customer lists, contract prices, and contract renewal dates, with M Science.  On July 16—the day after Yipit sent its first letter—Mr. Emmett finally shipped his Yipit work laptop back to Yipit.  When Yipit received and inspected it, it discovered months of text messages between Mr. Emmett and Alex Pinsky, M Science's Head of Sales.[1]  While Mr. Emmett was employed at Yipit, Mr. Pinsky repeatedly solicited information about Yipit's customer accounts, including the contract prices and renewal dates associated with those accounts, in connection with Mr. Pinsky's activities at M Science.  Mr. Emmett provided the requested information to Mr. Pinsky.  A few of the many examples appear in the below screenshots,[2] with Mr. Pinsky's texts on the left, and Mr. Emmett's on the right:



---

[1] Mr. Pinsky is also a former Yipit employee and also has a continuing contractual obligation to protect the confidentiality of Yipit's information.

[2] The client names and contract prices in the screenshots are part of Yipit's trade secret, confidential, and proprietary information and have been redacted.  Yipit is willing to discuss sharing an unredacted version of this letter if you agree to treat the screenshots and their contents as Highly Confidential and Attorneys' Eyes Only.

MUNGER, TOLLES & OLSON LLP

M Science
August 14, 2024
Page 3





MUNGER, TOLLES & OLSON LLP

M Science
August 14, 2024
Page 4

Further, Mr. Emmett appears to have shared Yipit's trade secret, confidential, and proprietary information with Mr. Pinsky over Facebook (as Yipit had feared but which you previously denied). For example, as the below image shows, Mr. Pinsky requested a "general guide" on certain Yipit clients if Mr. Emmett "ha[d] facebook open." Mr. Emmett responded that he "can help." This evidence, coupled with Yipit's records showing that Mr. Emmett uploaded files from his work computer to Facebook, strongly suggests that Mr. Emmett shared Yipit's files with Mr. Pinsky over that platform, corroborates Yipit's initial suspicion on this topic, and leaves Yipit extremely concerned about the (in)adequacy of M Science's initial "investigation."



Worse, Mr. Pinsky is not the only M Science employee that obtained Yipit's trade secret, confidential, and proprietary information for the benefit of M Science. On June 18, 2024, Mr. Emmett and Mr. Pinsky exchanged text messages about "a list of [Yipit's] current accounts that underpay." Mr. Pinsky instructed him not to send that list, but instead to screenshare it with himself and "Val"—presumably, Valentin Roduit, M Science's Chief Revenue Officer—promising they would "discuss" the "best way" to "share" that information:

MUNGER, TOLLES & OLSON LLP

M Science
August 14, 2024
Page 5

It should go without saying that improper and unlawful disclosure of this sort is highly prejudicial to Yipit. And, in light of these alarming findings, your claims that "Mr. Emmett did not use [Yipit's files] for the benefit of M Science, provide the files to anyone at M Science, [or] share the files with anyone at M Science," and that "M Science was unaware that Mr. Emmett ever had the files in his possession," appear demonstrably false. Aug. 2, 2024, Letter at 1.

Yipit therefore ***demands a continued and thorough investigation into the extent to which its trade secret, confidential, and proprietary information was shared with Mr. Pinsky, Mr. Roduit, or anyone else at M Science***. This should include, but not be limited to, (1) a thorough inquiry into the communications between Mr. Emmett, Mr. Pinsky, and Mr. Roduit from at least March 2024 to the present; (2) a search of Mr. Pinsky and Mr. Roduit's documents and devices for Yipit information (in addition to a search of Mr. Emmett's, which Yipit previously requested and further describes below), and (3) a search of M Science's systems for any documents that Mr. Emmett uploaded or transferred into those systems, even documents with seemingly innocuous names, as further described below. As the foregoing should make clear, it is ***not*** sufficient to simply rely on Mr. Emmett's representations about his conduct without independent investigation into their veracity. ***Please provide Yipit with your plan for investigating this matter; collecting and returning Yipit's trade secret, confidential, and proprietary information to Yipit; and ensuring that such information is not further shared at M Science as soon as possible***, and in any event by August 21, 2024.

Further, in order to understand when and with whom Mr. Emmett might have shared Yipit's trade secret, confidential, and proprietary information, ***Yipit demands a thorough***

MUNGER, TOLLES & OLSON LLP

M Science
August 14, 2024
Page 6

*timeline of M Science's communications with Mr. Emmett regarding his prospective and actual employment*.  This timeline should identify every M Science employee or agent with whom Mr. Emmett met or corresponded and should include, at least, the dates on which M Science or its employees or agents:

      (1) first communicated with Mr. Emmett, formally or informally, regarding potential employment at M Science;

      (2) met with Mr. Emmett to inform him about, or formally or informally recruit him to, M Science;

      (3) interviewed Mr. Emmett, formally or informally, for a position at M Science;

      (4) offered Mr. Emmett employment at M Science;

      (5) received Mr. Emmett's acceptance of M Science's offer; and

      (6) began employing Mr. Emmett.[3]

Again, please provide this timeline by August 21, 2024.

      If you contend that M Science no longer possesses or uses Yipit's trade secret, confidential, and proprietary information, in order to confirm that representation, Yipit demands that M Science's CEO sign and return the certification, attached as Exhibit A to this letter, confirming as much.

      Turning to Mr. Emmett, your letter fails to appreciate the severity of his misconduct and, at times, evidences a profound misunderstanding of the facts.  Beginning with Facebook, your letter acknowledges that Mr. Emmett attached files containing information from Yipit's systems, sent those files over Facebook Messenger, and retained those files after he left Yipit.  Aug. 2, 2024, Letter at 1.  This does nothing to assuage Yipit's concerns, especially considering that your letter offers no explanation for this misconduct.  Further, Yipit's newly discovered evidence of the communications between Mr. Emmett and Mr. Pinsky cast your assertion that Mr. Emmett only sent these messages to "himself" into very serious doubt.  *Id*.

      As to LinkedIn, your letter claims that any transfer of Yipit's information was "for business purposes," *id.*, but again, Mr. Emmett's conduct is wholly inconsistent with that assertion.  By way of example, on March 6, 2024, Mr. Emmett uploaded an Excel file titled "ZETaxes2024" to his LinkedIn account.  But despite its name, the file contained highly sensitive data about Yipit's clients, including their contract renewal dates and the prices associated with those contracts.  Mr. Emmett uploaded this file first to LinkedIn and then, within minutes, to Facebook.  Your letter provides no justification for these actions (in particular, the naming of a highly confidential document with a title that suggests the document is personal), and there was certainly no legitimate business reason for this conduct.  Again, in light of the

---

[3] Yipit requested much of this information from Mr. Emmett in its July 15, 2024, letter but received no responsive information from him.

MUNGER, TOLLES & OLSON LLP

M Science
August 14, 2024
Page 7

newly discovered text messages, it is much more likely that Mr. Emmett was uploading this information to share with others.

Yipit is also concerned to learn that Mr. Emmett deleted evidence of the files he transmitted to Facebook, particularly given his prior certification that he had no Yipit documents in his possession. *See id.* ("after his employment with Yipit terminated and before receiving your letter, Mr. Emmett deleted the messages and the files from his possession"); *see also* July 15, 2024, Letter to Z. Emmett, Ex. B. Your letter does not specify when these messages and files were deleted, or why. Nor does it give Yipit confidence that Mr. Emmett will abide by his obligation to preserve all relevant evidence.

Yipit therefore demands ***a continued and thorough investigation into Mr. Emmett to determine the scope of his misconduct and identify any information or documents in his possession originating from Yipit.*** The scope of that investigation should include Mr. Emmett's text messages, his online and cloud accounts (including but not limited to his Facebook and LinkedIn accounts), and his personal and work electronic devices (including but not limited to his Teams messages at M Science). And it should include a thorough search for, *inter alia*, any misleadingly-named files containing Yipit information (including but not limited to "ZETaxes2024") and for any messages from Mr. Emmett about Yipit's customers or business practices. ***Again, please provide Yipit with your plan for such an investigation and for collecting and returning Yipit's trade secret, confidential, and proprietary information as soon as possible***, and in any event by August 21, 2024.

Additionally, Yipit demands answers to the following questions by August 21, 2024:

(1) Why did Mr. Emmett upload Yipit's trade secret, confidential, and/or proprietary information—including but not limited to the information in "ZETaxes2024"—to Facebook and LinkedIn?

(2) When Mr. Emmett uploaded Yipit's trade secret, confidential, and/or proprietary information—including but not limited to "ZETaxes2024"—to Facebook and LinkedIn's messaging applications, to whom did he send those files?

(3) Provide a list of everyone with whom Mr. Emmett shared Yipit's trade secret, confidential, and/or proprietary information, what information he shared, and the dates of those exchanges.

(4) Provide a list of everyone at M Science who asked, encouraged, or instructed Mr. Emmett to exfiltrate or share Yipit's documents or information, the dates of such requests, and the purpose of such requests.

MUNGER, TOLLES & OLSON LLP

M Science
August 14, 2024
Page 8

(5) Why did Mr. Emmett name an Excel sheet containing Yipit's highly sensitive customer data "ZETaxes2024"?

(6) Did Mr. Emmett communicate with anyone (excluding Yipit employees or customers) about Yipit's information or documents on or around March 6, 2024? If so, with whom, and what was the content of those communications?

(7) Provide a detailed accounting of what Mr. Emmett did with Yipit's trade secret, confidential, and/or proprietary information after transferring or uploading it via Facebook or LinkedIn.

(8) For every meeting at M Science that Mr. Emmett attended where Yipit's trade secret, confidential, and/or proprietary information was shared or discussed, provide the date of the meeting, a list of attendees, and a summary or recording of the meeting.

(9) Did Mr. Emmett create any electronic or hard copies of the exfiltrated files, or make any notes, summaries, or other versions of the information contained therein?

(10) On what basis did Mr. Emmett certify that he had deleted all Yipit documents, files, and data in his possession (*see* July 15, 2024, Letter to Z. Emmett, Ex. B), given that he still had Yipit's trade secret, confidential, and/or proprietary information in his personal accounts?

(11) Why did Mr. Emmett fail to disclose his uploads of Yipit's trade secret, confidential, and proprietary information to Yipit personnel prior to leaving Yipit and despite signing his Acknowledgement and Attestation Form on June 17, 2024 (*see id.*)?

(12) On what dates and why did Mr. Emmett delete Yipit's trade secret, confidential, and/or proprietary information from his personal accounts?

(13) On what dates and why did Mr. Emmett access, modify, or erase data from his Yipit laptop before returning it to Yipit?

Finally, Yipit reiterates its demand that, once a thorough investigation is complete and all of Yipit's documents and information are returned to Yipit, Mr. Emmett sign and return a certification that he has no additional trade secret, confidential, and/or proprietary information from Yipit. We have attached an amended certification to that effect as Exhibit B. The first and second paragraphs mirror the certification you sent us on August 2, 2024. However, Yipit requires additional assurance that Mr. Emmett will abide by his confidentiality and non-solicitation obligations going forward—particularly in light of the troubling evidence of his

MUNGER, TOLLES & OLSON LLP

M Science
August 14, 2024
Page 9

misconduct that Yipit continues to uncover—and has therefore added a third paragraph with forward-looking language.

Yipit explicitly reserves all of its rights, including but not limited to the right to take appropriate legal action against Mr. Emmett, Mr. Pinsky, and/or M Science for breach of contract, intentional interference with contract, and trade secret misappropriation, and the right to report any misconduct to law enforcement. Yipit also reiterates that Mr. Emmett and M Science (including its employees and agents) have the obligation to preserve all relevant information and evidence; in the event your clients violate this obligation, Yipit reserves its rights to take appropriate action, including but not limited to claims related to the spoliation of evidence.

We look forward to your prompt attention to this matter.

Respectfully,

Laura D. Smolowe
Vincent Y. Ling

*Counsel for Yipit*

Encls.
- Exhibit A (Certification of No Materials)
- Exhibit B (Certification of No Materials and Compliance with Ongoing Obligations)

# EXHIBIT A

**CERTIFICATION OF NO MATERIALS**

I certify that, based on a thorough search of M Science's electronic systems, including but not limited to iMessage accounts of M Science employees, M Science does not possess any of Yipit's trade secret, confidential, or proprietary information. To the extent that the above-referenced searched revealed any such information, it has been returned to Yipit and removed from M Science's possession. No copies, notes, summaries, or versions of such information have been retained by M Science or its employees, and neither M Science nor its employees will reference, use, or share such information.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.


Date: August _____, 2024                    _____


                              Printed Name: _____

                              Title:            _____

# EXHIBIT B

## CERTIFICATION OF NO MATERIALS
## AND COMPLIANCE WITH ONGOING OBLIGATIONS

I certify that I have conducted a thorough search of my accounts (including but not limited to my Facebook and LinkedIn accounts), hard copy files, and electronic devices (including but not limited to iMessages) for documents, data, or information belonging to Yipit, LLC ("Yipit").  I have returned all such documents, data, and information to counsel for Yipit.  I certify that I do not have in my possession, custody, or control, nor have I failed to return, any additional documents, data, or information belonging to Yipit.  Notwithstanding the foregoing, I understand that I may keep a copy of Yipit's personnel records relating to me.

I further certify that, since my resignation from Yipit, I have not solicited, induced, encouraged, or participated in soliciting, inducing, or encouraging any employee of Yipit to terminate his or her relationship with Yipit.

I further certify that I will (1) maintain the confidentiality of YipitData's confidential, non-public information pursuant to the terms of the YipitData Proprietary Information, Inventions and Non-Solicitation Agreement to which I am a party, and (2) continue to abide by the non-solicitation obligations set out in my Proprietary Information, Inventions, and Non-Solicitation Agreement with Yipit for a period of one year following my departure from Yipit, that is, until June 17, 2025.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.


Date:  August _____, 2024          _____


                                    Printed Name: _____