UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YIPIT, LLC d/b/a YipitData<br><br>        Plaintiff,<br><br>v.<br><br>ZACHARY EMMETT,<br>ALEXANDER PINSKY, and<br>JOHN DOES 1-10,<br><br>        Defendants. | Case No. 1:24-CV-07854 (JGK)<br><br>**JURY TRIAL DEMANDED**<br><br>**[REDACTED VERSION]** |

**YIPIT'S REPLY BRIEF IN SUPPORT OF ITS
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT.........................................................................................................................2

    A. Yipit Is Likely To Succeed on The Merits................................................................2

        *1. Pinsky Ignores Key Evidence of His Misappropriation.*.............................2

        *2. Pinsky's Objections to Yipit's Evidence Lack Merit.*.................................3

        *3. Yipit's Contract Claim Is Likely to Succeed.* ...............................................6

    B. Yipit Will Suffer Irreparable Harm Without an Injunction. ....................................6

    C. The Balance of Hardships And Public Interest Favor A Preliminary Injunction. ..................................................................................................................9

III. CONCLUSION...................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Airbnb, Inc. v. City of New York*,
   373 F. Supp. 3d 467 (S.D.N.Y. 2019) ................................................................................... 6

*Caro Cap., LLC v. Koch*,
   653 F. Supp. 3d 108 (S.D.N.Y. 2023) ................................................................................. 10

*Coastal Dist., LLC v. Town of Babylon*,
   No. 06-CV-0981, 2006 WL 270252 (E.D.N.Y. Jan. 31, 2006),
   *aff'd* 216 F. App'x 97 (2d Cir. 2007) ..................................................................................... 7

*In re Dana Corp.*,
   574 F.3d 129 (2d Cir. 2009) .................................................................................................. 4

*eShares, Inc. v. Talton*,
   727 F. Supp. 3d 482 (S.D.N.Y. 2024) ................................................................................... 5

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) .................................................................................................. 6

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
   82 F. Supp. 2d 126 (S.D.N.Y. 1999) ..................................................................................... 9

*Intertek Testing Servs., N.A., Inc. v. Pennisi*,
   443 F. Supp. 3d 303 (E.D.N.Y. 2020) ............................................................................... 3, 7

*KCG Holdings, Inc. v. Khandekar*,
   No. 17-CV-3533-AJN, 2020 WL 1189302 (S.D.N.Y. Mar. 12, 2020) .............................. 6, 8

*Payment All. Int'l, Inc. v. Ferreira*,
   530 F. Supp. 2d 477 (S.D.N.Y. 2007) ................................................................................... 2

*R.R. Donnelley & Sons Co. v. Fagan*,
   767 F. Supp. 1259 (S.D.N.Y. 1991) ...................................................................................... 4

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*,
   60 F.3d 27 (2d Cir. 1995) ...................................................................................................... 7

*Yang v. Kosinski*,
   960 F.3d 119 (2d Cir. 2020) .................................................................................................. 9

**STATE CASES**

*Tri-Star Lighting Corp. v. Goldstein*,
    151 A.D.3d 1102 (2017) ...........................................................................................................5

I.      INTRODUCTION

For months, Messrs. Emmett and Pinsky flagrantly misappropriated Yipit's trade secrets and Proprietary Information[1] in full awareness that their conduct was illegal.  Undisputed forensic evidence shows that Emmett exfiltrated sensitive Yipit files, sent detailed Yipit information to Pinsky, and worked with Pinsky and others to use this information at M Science. Pasquale Decl. ¶¶ 11-12, Ex. 9.  After filing its Motion, Yipit obtained *more* evidence of Defendants' misdeeds.  Benninger Decl. ¶ 2.[2]  That evidence reveals, *inter alia*, that Emmett acted as a self-described "mole" for M Science, Bortnick Decl., Ex. B at 9, and that Pinsky disclosed Yipit's confidential and trade secret information to multiple M Science executives, including its CEO, Mike Marrale, and its then-CRO, Valentin Roduit.  Pinsky Decl., Ex C; Benninger Decl., Exs. 1-2, 4-5.

Emmett does not contest Yipit's showing that he willfully misappropriated its trade secrets and Proprietary Information.  Nor does he dispute that Yipit will suffer irreparable harm, or argue that an injunction would be burdensome or against the public interest.  Indeed, Emmett expresses a willingness to "give Yipit the assurances it needs to resolve this case." Dkt. No. 58. If that were true, he would stipulate to injunctive relief.  But given his blatant theft of Yipit's information and his failure, for months and through the date of this filing, to certify that he no longer has and will not misuse that information, *see* Smolowe Decl. ¶ 14, court-imposed injunctive relief is necessary.

Pinsky, for his part, blames everyone but himself.  Opp. at 1-2, 10-11, 23.  But this deflection cannot erase Pinsky's intentional wrongdoing.  The evidence demonstrates that Pinsky

---

[1] *See* Frawley Decl., Ex. 2, § 1.2 (defining "Proprietary Information").
[2] Yipit promptly produced this information to Defendants' representatives, and Pinsky relies on it extensively his filing.  Benninger Decl. ¶ 3-4.

1

not only misappropriated Yipit's trade secrets and Proprietary Information—including over text, Teams, Facebook, and screenshare—but also concealed his misappropriation and counseled others to do likewise. Pinsky now claims he no longer possesses any Yipit information—but if that were true, he would consent to an injunction. In any event, Pinsky doubtlessly *remembers* some of Yipit's information, future use or disclosure of which would irreparably harm Yipit.

Accordingly, the Court should issue Yipit's requested injunction.

## II.  ARGUMENT

### A.  Yipit Is Likely To Succeed on The Merits.

To justify injunctive relief, Yipit need only show a likelihood of success on "one of its claims." *Payment All. Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 483 (S.D.N.Y. 2007). Yipit has done much more: As its Motion and declarations demonstrate in exacting detail, strong evidence supports Yipit's trade secret and contract claims against both Defendants. Emmett does not challenge Yipit's showing, and Pinsky's attempt to do so fails.

#### 1.  *Pinsky Ignores Key Evidence of His Misappropriation.*

Pinsky's Opposition fails to address some of the most significant evidence against him, including (but not limited to) his acquisition and use of a customer list Emmett made using Yipit's trade secrets. As already explained, Emmett used Yipit's trade secrets, including the stolen files, to create a list of M Science "accounts that underpay compared to" Yipit accounts. Mot. at 17. This list would "help M Science price its products more competitively" and "strategically identify which customers to target." Melzer Decl. ¶ 25. Pinsky acquired this list by "[s]creenshare," knowing it contained Yipit information, and strategized to "attack and share" (*i.e.*, use and disclose) it with others throughout M Science. Pasquale Decl. Ex. 9 at 52. Pinsky

2

later requested information from "the list" and discussed listed customers. Benninger Decl. Ex. 3 at M_000105.

Yipit's newly-received evidence, including the same messages Pinsky uses to blame others, in fact further inculpates Pinsky. *Pinsky himself* sent M Science's CEO (among others) confidential and trade secret information he obtained from Emmett about Yipit's most differentiated ticker reports, Yipit's highly confidential data sources, and upcoming new product launches. Pinsky Decl. Ex. C at 3-4; Melzer Reply Decl. ¶¶ 10-12. Further, Pinsky was an architect of the plan to recruit Emmett to obtain Yipit's trade secrets, opining that Emmett's misappropriation of such information "alone" made him "hirable." Benninger Decl. Ex. 4 at M_000119. Pinsky went on to repeatedly relay Yipit trade secrets from Emmett to M Science's then-CRO. *Id.* Ex. 1, 4-5. Meanwhile, Pinsky encouraged other M Science employees to avoid leaving a "paper trail" of their misappropriation. *Id.* Ex. 6 at M_000235-37; Pasquale Decl. Ex. 9 at 51-52. This evidence is more than sufficient to show intentional trade secret misappropriation. *See Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 342 (E.D.N.Y. 2020).

        2.        ***Pinsky's Objections to Yipit's Evidence Lack Merit.***

Even where Pinsky *does* address Yipit's evidence, his arguments fail. **First,** Pinsky mischaracterizes *months* of messages with Emmett as "a handful of texts" containing "high-level, generic price information." Opp. at 8. Those messages are not generic and high-level, but highly sensitive and confidential. Melzer Reply Decl. ¶ 2. They contain individualized information about Yipit's customers, prices, subscriptions, and strategies (*e.g.*, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉) and

3

specific details about Yipit's products (*e.g.*, screenshots of its consumer dashboard). Pasquale Decl. Ex. 9 at 14, 23, 40-42, 47. Courts routinely find that such information is "protected by trade secret law." *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009). And this is just the tip of the iceberg: Defendants' messages are replete with detailed, illicit exchanges. Pasquale Decl. Ex. 9.

The sole case Pinsky cites to challenge Yipit's showing, *R.R. Donnelley & Sons Co. v. Fagan*, 767 F. Supp. 1259 (S.D.N.Y. 1991), is inapposite. As Pinsky concedes, that case denied a preliminary injunction where "uncontradicted testimony" established that the information was readily ascertainable. Opp. at 21. Here, by contrast, Yipit has proffered testimony demonstrating that its customer and pricing information is *not* readily available, Melzer Reply Decl. ¶ 3, and is protected by extensive security measures, Pasquale Decl. ¶¶ 7-8; Frawley Decl. ¶¶ 4, 12. Pinsky's vague, foundation-less contention that such information "is often shared in the industry," Pinsky Decl. ¶ 17, is thoroughly rebutted by Yipit's credible testimony explaining that this is not true, and that purported pricing information from "the customers themselves," Opp. at 21, is unreliable. Melzer Reply Decl. ¶¶ 4-5.

***Second***, the evidence thoroughly rebuts Pinsky's claim that he did not acquire any Yipit files through Facebook. Pinsky specifically asked Emmett for information on two Yipit customers *if Emmett had Facebook open*:

> Also if you don't own any of these and have facebook open. general guide on:
> ▇▇▇, ▇▇▇ could be helpful

> Sounds good

4

Pasquale Decl., Ex. 9 at 18.  This message does not merely suggest that he and Emmett were "on Facebook at the same time."  Opp. at 21.  It indicates that Pinsky knew Emmett was storing Yipit's files on Facebook *and* wanted Emmett to send him a file that way.  Emmett's subsequent activities suggest that he did so.  *See* Pasquale Decl. ¶¶ 26-27.  Pinsky's only contrary evidence is his self-serving claim that he "ha[s] not used Facebook for years" and unauthenticated Facebook screenshots that he printed.  Pinsky Decl. ¶ 12, Ex. B.[3]  This cannot overcome Yipit's showing.[4]

*Finally,* Pinsky incorrectly asserts that "Yipit must demonstrate that Pinsky used [Yipit's] information or damaged Yipit" to succeed on its trade secret misappropriation claims.  Opp. at 21.  Prior damage is *not* required for a preliminary injunction, *see* II.B, *infra*, and Pinsky's citation lists only the requirements for "a cause of action to recover damages," *Tri-Star Lighting Corp. v. Goldstein*, 151 A.D.3d 1102, 1106 (2017).  Likewise, Yipit's DTSA claim does not require a showing of use (acquisition or disclosure is sufficient), and a preliminary injunction can issue based on that claim alone.  And even if New York common law requires use, *but cf. eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 495 (S.D.N.Y. 2024) (suggesting that dissemination would suffice), Pinsky *has* used Yipit's secrets.  *See* II.A.1, *supra*; Mot. at 16-17.

---

[3] Pinsky's "activity log" does not appear accurate or comprehensive.  For one, it is unclear whether it would register activity if Pinsky remained signed in to Facebook's website or app without logging in or out (as many people do).  Even more troubling, the screenshot of Pinsky's 2024 activity cuts off in September and does not show spring 2024, when the misappropriation occurred.  *See* Pinsky Decl. Ex. B at 5-6.

[4] Further, whether files were transferred directly through Facebook or whether Defendants found some indirect means, such as screensharing, to share Yipit's information without leaving a paper trail.  The evidence establishes that some sharing occurred, so Pinsky's quibbling about Facebook is a red herring.

### 3. *Yipit's Contract Claim Is Likely to Succeed.*

In a footnote, Pinsky raises one challenge to Yipit's contract claim: He asserts that the information he misappropriated "does not meet the contractual definition of Proprietary Information" because it supposedly post-dates his employment with Yipit. Opp. at 20 n.12. That is incorrect: At least some of the information Pinsky misappropriated, including the identities of Yipit customers, existed while he worked at Yipit. Melzer Reply Decl. at ¶¶ 6-9; *see* Frawley Decl. Ex. 2 § 1.2(c) ("customer lists, names, [and] representatives" are "Proprietary Information").[5]  Yipit is highly likely to prevail on its contract claim, which Pinsky does not otherwise challenge.

### B. **Yipit Will Suffer Irreparable Harm Without an Injunction.**

As Yipit's Motion explained, the disclosure of confidential information "is the quintessential type of irreparable harm that cannot be compensated or undone by money damages." *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019) (citation omitted). Pinsky's own authority acknowledges that "[a] rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the[ir] value," *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009). That is exactly the situation here. Defendants have already disseminated Yipit's trade secrets (knowingly, and for months), and there is a substantial risk that they will do so again unless restrained by this Court. Because those trade secrets derive substantial value from their secrecy, such disclosure would irreparably "impair the trade secrets' value." *KCG*

---

[5] Pinsky's interpretation of the contract is also incorrect, *see* Dkt. No. 48 at 2, but the Court need not reach this issue here.

*Holdings, Inc. v. Khandekar*, No. 17-CV-3533-AJN, 2020 WL 1189302, at *17 (S.D.N.Y. Mar. 12, 2020).

Yipit also faces irreparable injury due to the threat of lost business opportunities, reputational harm, and diminished goodwill.  These injuries "are difficult to measure in dollars, and thus, these types of injuries are irreparable harm."  *Coastal Dist., LLC v. Town of Babylon*, No. 06-CV-0981, 2006 WL 270252, at *3 (E.D.N.Y. Jan. 31, 2006), *aff'd* 216 F. App'x 97 (2d Cir. 2007); *see Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995).  A competitor who receives Yipit's trade secrets could poach Yipit's business by strategically altering its own outreach, impair Yipit's reputation by emulating its proprietary methodologies, and irreparably damage the goodwill that Yipit has spent years developing. Melzer Decl. ¶¶ 29-31.  Additionally, "[a]lthough not dispositive," the language in Pinsky's contract "further supports a finding of irreparable harm."  *Intertek*, 443 F. Supp. 3d at 332; *see* Frawley Decl. Ex. 2 § 9.1 ("violation of this Agreement" "constitute[s] immediate and irreparable injury").

Pinsky's response misses the point.  He argues that Yipit has not shown *prior* harm from his misappropriation.  Opp. at 12-17, 20.  But a "plaintiff is not required to demonstrate that it has actually suffered harm" to obtain an injunction.  *Intertek*, 443 F. Supp. 3d at 328.  Yipit faces a substantial risk of irreparable harm regardless of whether Yipit has already realized losses due to Pinsky's wrongdoing.  And, Yipit *has* already suffered harm, losing at least five customers, and the evidence suggests these losses stemmed from Defendants' conduct.  *See* Melzer Decl. ¶¶ 26, 30.  Pinsky offers little more than speculation in response—and regardless of whether *he* alone is responsible for Yipit's lost customers, the evidence strongly suggests that the conspiracy he helped orchestrate *was* responsible.

7

Finally, Pinsky claims he does not pose a threat of harm because he no longer possesses Yipit information. Opp. at 19-20. But Yipit—and this Court—cannot rely on his unverified representations: Pinsky not only repeatedly misappropriated Yipit's trade secrets but also *intentionally concealed his misappropriation*.[6] Mot. at 21. In any case, Pinsky undoubtedly remembers some of Yipit's information. After all, this information is extremely competitively valuable, and Pinsky accessed and used it just a few months ago. Absent injunctive relief, nothing prevents him from misusing the information he remembers.

Moreover, as with Emmett, the risk of improper disclosure has only broadened since Pinsky resigned from M Science. *See* Mot. at 21-22. Pinsky has worked in the alternative data industry his entire career and is actively seeking work in that industry. Pinsky Decl. ¶¶ 4, 34. There is nothing stopping him from disseminating Yipit's information during his job search or in whatever new employment he finds.[7] If anything, Pinsky has an incentive to leverage his illicit knowledge to secure new employment. This Court has found irreparable harm under similar circumstances. In *KCG Holdings*, the defendant downloaded the plaintiff's trade secrets, obtained a job offer at a competitor, and had that offer rescinded when his misappropriation was revealed. 2020 WL 1189302 at *4. Although the defendant deleted all the stolen files, *id*., this Court explained that the "the irreparable-harm requirement [was] met" because the defendant "could rely on the knowledge he gleaned from his improper acquisition and use" it at "another financial-services firm," *id*. at *17. The same is true here.

---

[6] Further, although Pinsky signed a certification that he no longer possesses Yipit's information, *see* Opp. at 10, that certification omits the requested attestation that Pinsky will keep Yipit's information confidential in the future, *see* Smolowe Decl. Ex. 8 at 5.

[7] That Pinsky has not found a job in his industry in the last month scarcely indicates that he is "unemployable," Opp. at 5.

8

### C. The Balance of Hardships And Public Interest Favor A Preliminary Injunction.

Pinsky does not and cannot seriously dispute that the balance of hardships favors Yipit, as it is no hardship for him to refrain from future misappropriation or abide by his voluntary contractual obligations, but the risk to Yipit of ongoing misappropriation is severe and potentially without remedy. *See* Mot. at 23. While Pinsky argues that he has struggled to find employment, this is irrelevant for the balance-of-hardships factor, as it is not an "effect . . . of the granting or withholding of the requested relief." *Yang v. Kosinski*, 960 F.3d 119, 135 (2d Cir. 2020) (citation omitted). Rather, it is a consequence of Pinsky's own willful misappropriation.[8]

The public interest in upholding trade secret law and promoting enforcement of valid contracts also strongly favors a preliminary injunction. *See* Mot. at 24. Pinsky's suggestion that the public interest disfavors an injunction because there are additional defendants that Yipit has not (yet) sued lacks merit. The existence of additional potential wrongdoers does not diminish the urgency or necessity of obtaining injunctive relief against *these* Defendants, against whom the evidence is irrefutable. In any event, Yipit did not have much of the information inculpating M Science and its other employees until *after* Yipit filed its Motion. Benninger Decl. ¶ 2. Yipit is continuing its investigation into additional wrongdoers and evaluating its options.

Finally, Pinsky's argument that Yipit acted with unclean hands fails. "The unclean hands defense does not permit defendants to raise all of plaintiff's alleged inequitable conduct." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999). It applies only "where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith *related to the matter at issue to the detriment of the other party*."

---

[8] Pinsky baselessly suggests that Yipit had an improper motive for bringing this lawsuit. Opp. at 22-23. Yipit filed suit only after its pre-litigation attempts to obtain assurances against future misappropriation failed. *See generally* Smolowe Decl.

9

*Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023) (emphasis added). Pinsky has not identified any such conduct by Yipit related to this lawsuit (and there is none), much less any conduct to his detriment, so his unclean hands defense cannot succeed. Pinsky's assertions are also false: Gerson Lehrman Group is not a Yipit competitor; Yipit has never improperly sought its confidential information; and Yipit does not maintain a database of M Science confidential information. Melzer Reply Decl. ¶¶ 13-15.

### III.    CONCLUSION

The Court should grant the requested preliminary injunction against both Defendants.

Dated: December 13, 2024

MUNGER, TOLLES & OLSON LLP

By: *[signature]*

Laura D. Smolowe (admitted *pro hac vice*)
Jennifer L. Bryant (admitted *pro hac vice*)
Matthew Miyamoto (admitted *pro hac vice*)
Taylor L. Benninger (admitted *pro hac vice*)
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Tel: (213) 683-9100
*Attorneys for Plaintiff*
*(Lead Counsel)*

YANKWITT LLP
Russell M. Yankwitt
Michael H. Reed
140 Grand Street, Suite 501
White Plains, New York 10601
Tel.: (914) 686-1500
*Attorneys for Plaintiff*
*(Local Counsel)*

## CERTIFICATION OF COMPLIANCE

Pursuant to Paragraph II(D) of the Court's Individual Practices, I hereby certify that the total number of words in this memorandum of law, excluding the cover page, table of contents, table of authorities, signature line, and certification of compliance is 2,792.

_____
Laura D. Smolowe