## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

YIPIT, LLC d/b/a YipitData,

      Plaintiff,

v.

ZACHARY EMMETT,
ALEXANDER PINSKY,
VALENTIN RODUIT,
MICHAEL MARRALE;
M SCIENCE LLC, and
JOHN DOES 1-10,

      Defendants.

Case No. 1:24-cv-07854

## MICHAEL MARRALE'S MEMORANDUM OF LAW IN OPPOSITION TO YIPIT'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   LEGAL STANDARD AND BURDEN........................................................ 2

III.  ARGUMENT ........................................................................................... 3

     A.    Yipit Is Not Likely to Succeed on the Merits of Its Claims Against Marrale. .......................................................................................... 3

     B.    Yipit Cannot Establish Irreparable Harm. ........................................ 8

           1.    Yipit's Allegations of Past Harms Are Insufficient to Establish Irreparable Harm. ....................................................... 8

           2.    Yipit Cannot Show Likely Future Irreparable Harm. ................ 9

           3.    Irreparable Harm Cannot Be Presumed or Found in this Case Under the Applicable Law. ............................................... 9

           4.    Yipit's Speculation About Marrale Using Information About a Data Vendor Does Not Establish Irreparable Harm. ............... 13

     C.    Neither the Balance of the Equities, Nor the Public Interest, Favor Yipit............ 14

     D.    Yipit's Motion Should Be Denied Because Yipit Has Not Come to This Court With Clean Hands. ................................................................ 16

     E.    Yipit's Proposed Injunction Order Is Not Sufficiently Specific. .......................... 16

IV.  CONCLUSION......................................................................................... 16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Airlines, Inc. v. Imhof,*
620 F. Supp. 2d 574 (S.D.N.Y. 2009) ............................................................. 12

*Amimon, Inc. v. Shenzhen Hollyland Tech Co.,*
No. 20-CV-9170 (ER), 2023 WL 2478159 (S.D.N.Y. Mar. 13, 2023) ................... 10

*Ashland Mgmt. Inc. v. Janien,*
82 N.Y.2d 395 (1993) ............................................................................... 5

*BaseCap Analytics Inc. v. Amenn,*
No. 1:23-CV-09370-MKV, 2023 WL 8113524 (S.D.N.Y. Nov. 22, 2023) ........... 15

*Brown v. Gilmore,*
533 U.S. 1301 (2001) ................................................................................. 3

*Do The Hustle, LLC v. Rogovich,*
2003 WL 21436215 (S.D.N.Y. June 19, 2003) .............................................. 3

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
559 F.3d 110 (2d Cir. 2009) ................................................................ *passim*

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.,*
730 F.2d 61 (2d Cir. 1984) (per curiam) ....................................................... 9

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
481 F.3d 60 (2d Cir. 2007) ......................................................................... 2

*Lentjes Bischoff GmbH v. Joy Env't Techs., Inc.,*
986 F. Supp. 183 (S.D.N.Y. 1997) ............................................................ 14

*Manrique v. State Farm Mut. Auto. Ins. Co.,*
No. 21-CV-224 (KMK), 2021 WL 5745717 (S.D.N.Y. Dec. 2, 2021) ................. 8

*McGinnis v. Crissell,*
No. 9:13-CV-1538 LEK/DJS, 2015 WL 5916472 (N.D.N.Y. Oct. 8, 2015) ........... 8

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,*
883 F.3d 32 (2d Cir. 2018) ......................................................................... 3

*Nicosia v. Amazon.com, Inc.,*
834 F.3d 220 (2d Cir. 2016) ..................................................................... 8, 9

*ParTech, Inc. v. Jackson,*
   No. 24-CV-9381 (JAV), 2025 WL 343215 (S.D.N.Y. Jan. 29, 2025) ...........................11, 12

*Passlogix, Inc. v. 2FA Tech., LLC,*
   No. 08 Civ. 10986, 2010 WL 2505628 (S.D.N.Y. June 21, 2010)........................................10

*TGG Ultimate Holdings, Inc. v. Hollett,*
   No. 16 CIV. 6289 (VM), 2016 WL 8794465 (S.D.N.Y. Aug. 29, 2016) .............................11

*TomGal*, 2022 WL 17822717 ..............................................................................................14, 16

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)..............................................................................................................14

**Other Authorities**

Restatement of Torts § 757, comment b)....................................................................................5

Michael Marrale ("Marrale") submits this Memorandum of Law in opposition to Yipit, LLC's ("Yipit") motion for a preliminary injunction (the "Motion"). For the reasons set forth herein, and in the Declarations submitted herewith, this Court should deny Yipit's Motion.

## I.     INTRODUCTION

Marrale is the CEO of M Science LLC ("M Science"). The only factual allegations in Yipit's Motion specific to Marrale are: 1) Marrale met briefly with Zachary Emmett during M Science's recruitment of Emmett; 2) Alex Pinsky ("Pinsky") sent Marrale (and others) an unsolicited Teams message in May of 2024 containing information that Emmett had shared about Yipit's business; information that was neither secret nor useful to Marrale or M Science; and 3) Marrale asked questions of Pinsky, seeking publicly available information, that went unanswered. Based on these flimsy allegations, Yipit seeks a broad-ranging preliminary injunction against Marrale personally. Yipit's Motion against Marrale is entirely meritless and should be denied.

First, Yipit is unlikely to succeed on the merits of its claims against Marrale. Yipit cannot show that Marrale acquired, used, or disseminated trade secret information. The limited information that Pinsky shared – unsolicited – with Marrale was not confidential or beneficial, and Marrale took no action based on that information. Yipit has not shown that Marrale received any other information regarding Yipit's business or clients from Emmett. In particular, Yipit has not shown and cannot show that Marrale received any of the eight specific documents that Yipit claims Emmett "exfiltrated" from Yipit to his personal files. Yipit's attempt to construct a claim against Marrale for theft of trade secrets from one non-actionable Teams message is frivolous.

Second, Yipit falls far short of carrying its burden to demonstrate irreparable harm, "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). The one exchange involving

Marrale that Yipit cites took place in **May of 2024**.  Marrale did not use that information for any purpose; he has no intention of using or disseminating that information in the future, and he no longer has access to the chat in question.  A preliminary injunction cannot issue to address past conduct, particularly stale, ten-month-old allegations.

Nor can Yipit show that Marrale poses any threat of future irreparable harm.  As set forth in detail in M Science's Memorandum in Opposition to Yipit's Motion, M Science – at the direction of Marrale and others – took extensive steps to remedy Emmett's misconduct and to ensure that no information that Emmett may have shared was used or disclosed by M Science.  M Science promptly severed its relationship with Emmett, and, in October of 2024, M Science parted ways with two M Science managers, Pinsky and Valentin Roduit ("Roduit"), who are the primary M Science employees with whom Emmett shared information regarding Yipit's clients and business.  Yipit cannot demonstrate the required actual and imminent future harm necessary to obtain a preliminary injunction and has not even alleged it has been damaged by any conduct of Marrale.

In addition to the absence of irreparable harm and lack of evidence against Marrale, there are numerous other reasons to deny Yipit's Motion.  Neither the balance of the equities, nor the public interest favor Yipit.  Yipit also comes to this Court seeking equitable relief when it has unclean hands.  Finally, Yipit's requested relief is not nearly detailed enough to survive scrutiny under Second Circuit precedent.

## II.    <u>LEGAL STANDARD AND BURDEN</u>

A preliminary injunction is "an extraordinary and drastic remedy," "that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted).  Indeed, a preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies."  *Id.*

(citation omitted). Thus, a preliminary injunction "should not be granted unless the rights of the parties are 'indisputably clear.'" *Do The Hustle, LLC v. Rogovich*, 2003 WL 21436215, at *8 (S.D.N.Y. June 19, 2003) (citing *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001)).

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

## III. ARGUMENT

Here, Yipit cannot meet the burden required to show that it is entitled to the "extraordinary and drastic remedy" it seeks. Yipit's Motion for a preliminary injunction fails for the following reasons: (1) Yipit is not likely to succeed on the merits of its claims against Marrale; (2) Yipit cannot establish irreparable harm; (3) the balance of the equities and public interest tip in Marrale's favor; (4) Yipit has unclean hands; and (5) Yipit's proposed order is not sufficiently specific.

### A. Yipit Is Not Likely to Succeed on the Merits of Its Claims Against Marrale.

In its Motion, Yipit argues that it is likely to succeed on the merits of its trade secrets claims against "Marrale, M Science's highest officer, [because he] participated in, directed, and ratified the misappropriation of Yipit's trade secrets." DKT 91, p. 19. Yipit then asserts that "[t]he May 16, 2024 messages between Pinsky, Roduit, Marrale, and Sante Faustini provide *an illustrative example*." *Id.* (emphasis added). A more accurate statement would have been that the May 16, 2024 chat provides the *only* example that Yipit has set forth to support the repeated conclusory claims against Marrale that litter its Motion. Further, as demonstrated below, Yipit has not made and cannot make the requisite showing that the generic and widely known information addressed in the May 16 chat is a protectable trade secret under the DTSA or New York common law.

Yipit argues that part of the unsolicited information conveyed to Marrale in the May 16 chat consisted of the disclosure that Yipit had recently signed an extension with a particular data provider (███). But the evidence shows that ███ is a widely known data provider to alternative data companies. *See* Declaration of Michael Marrale ("Marrale Dec."), ¶6; Declaration of Sante Faustini ("Faustini Dec."), ¶8. In fact, M Science had previously contracted with ███ to receive its data but elected to terminate that contract *eight months before* this May 2024 exchange because M Science "did not find ███'s data to be useful for [its] research." Marrale Dec., ¶6. And the fact that Yipit uses ███ data to support the brand performance analyses that Yipit publishes was obvious to M Science personnel before this May 2024 exchange. *See* Faustini Dec., ¶9.

Yipit next argues that Pinsky revealed the "specific data sources underlying its consumer package," referring to Pinsky's unsolicited statement in the messages that "most of their success has come with this consumer package with ████████████████ data." DKT 91, p. 19; *see also* DKT 92-2, at YIP0000329. Yipit argues that this data source information is "some of the most highly sensitive and confidential information in [Yipit's] business." DKT 91, p. 19 (quoting DKT 68, ¶11). This statement is demonstrably false.

As discussed above, M Science is well aware of what ███ can provide and decided eight months before this chat that it has no use for ███'s data. Moreover, Yipit's own website openly promotes its reliance upon both ████████████ (a data source company Yipit actually *acquired* in 2021) as data sources for the research that Yipit sells. *See* Marrale Dec., ¶7; Faustini Dec., ¶10 (testifying that Yipit's website discloses Yipit's use of ████████████████ ████████). In addition, M Science licensed and used ███'s data until Yipit acquired ███. *See* Marrale Dec., ¶7. Further, the prior declaration of Jamie Meltzer, Yipit's Senior Vice President of Investor Revenue ("Meltzer") specifically states that Yipit uses ████████ data to

support its research products.  *See* DKT 9, ¶2.  Given these facts, it is difficult to comprehend how Ms. Meltzer could call these sources "some of the most highly sensitive and confidential information in [Yipit's] business."  DKT 68, ¶11.

As a matter of law, this evidence establishes that this information is not sufficiently "secret" to be protectable under the DTSA or New York common law.  *See Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993) ("[A] trade secret [is defined] as any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage *over competitors who do not know or use it*.") (quoting Restatement of Torts § 757, comment b) (emphasis added).

Nor does the other purported evidence within this May 16 chat support Yipit's claims against Marrale.  Ms. Meltzer declared that information about Yipit's launch of a new ticker report for ▮▮▮▮▮▮▮, Inc. is "extremely confidential and valuable to Yipit's business and is a trade secret."  DKT 68, ¶¶10-11.  However, *the fact that Yipit was launching a new ticker report for* ▮▮▮▮▮*, Inc. was published on Yipit's website before the date of the Teams chat in question*. Marrale Dec., ¶5; Faustini Dec., ¶7.  Again, given that Ms. Meltzer declared that publicly available information is "extremely confidential," the Court must question the credibility of her Declaration.[1]

Further, Marrale's generalized inquiry concerning Yipit's "▮▮▮ methodology" reflects nothing more than a communication amongst colleagues concerning a competitor's recently

---

[1] The vague statements by Pinsky in the chat about how Yipit prices some of its products are also clearly not confidential and any argument to the contrary is belied by Ms. Meltzer's own Declaration testimony.  *See* Marrale Dec., ¶4; Faustini Dec., ¶6; DKT 9, ¶5.

launched product. The true motivation for this inquiry stemmed from the fact that Yipit had secured the services of "a former M Science employee that had spent years working on M Science's telecommunications and handset products and who had familiarity with M Science's proprietary data sourcing and modeling methods," and Marrale's corresponding concern that Yipit had built its ███ product by leveraging M Science's proprietary methodology. Marrale Dec., ¶9. Motivations aside, what is more critical to the Court's inquiry here is that there is nothing in the chat that is even arguably confidential or proprietary. No one in the chat had any insights to offer concerning Yipit's ███ product. *See* Marrale Dec., ¶8; *see also* DKT 92-2, at YIP0000327-329 ("[M. Marrale:] Do we know their ███ methodology? [S. Faustini:] I do not. Everyone I've spoken to says they aren't as outspoken on it as they are with other methodologies.").[2]

This same basic failing undermines Yipit's attempt to invoke the disputed testimony of M Science's former employee, Pinsky, to bolster its otherwise insufficient showing of a likelihood of success against Marrale. In its brief, Yipit cites Pinsky's vague assertion that "Marrale[] asked [him] to request information from [Zachary] Emmett about how Yipit packages some of its products," and tells the Court that "[t]his, too, is a Yipit trade secret . . . yet Marrale directed and encouraged its misappropriation." DKT 91, p. 19 (quoting DKT 53, ¶14). As an initial matter, Marrale denies making any such request of Pinsky. Marrale Dec., ¶10. Moreover, information

---

[2] Notably, in Meltzer's Declaration she states that Yipit has prepared a presentation, Yipit ███ Battle Deck, that "includes a detailed breakdown of the differences between Yipit's product and those of its competitors." *See* Dkt. 9 at ¶17(b). Yipit cannot credibly claim Marrale was seeking trade secrets when Yipit has armed its salespeople with a "Battle Deck" with details of its competitors' (presumably including M Science) ███ products.

about how Yipit packages its products is not confidential and can be readily obtained from public sources. *Id.* In fact, Yipit routinely discloses how it packages and prices various products to prospects and clients, who just as routinely share that information with M Science's salespeople. Marrale Dec., ¶4; Faustini Dec., ¶6. Yipit also maintains a public website that lists various packages it offers and what is included in each package. Marrale Dec., ¶10. And, just like the inquiry concerning Yipit's "███ methodology," there is no evidence to suggest that Pinsky ever provided a response to this disputed inquiry, much less the particulars of any such response that might allow the Court to gauge whether it was truly a trade secret or not under the law.

Finally, Marrale did not "ratify" any misappropriation of trade secrets. As discussed above, the May 16, 2024 chat does not contain any trade secrets, and Marrale did not address the chat with Pinsky or anyone else because it was a non-event. Marrale Dec., ¶11. Further, when Marrale learned of Yipit's allegations and Emmett's texts with Pinsky, Marrale and other members of M Science's senior management team quickly decided to take remedial measures to ensure any Yipit business or client information disclosed by Emmett was identified, returned, and not used or disclosed by M Science personnel. Marrale Dec., ¶14.

Yipit's evidentiary showing of trade secret misappropriation against Marrale is a faltering effort based on conclusory statements, not evidence. Yipit attempts to bolster its argument by conflating Marrale's actions with those of Emmett, Roduit, and Pinsky. *See, e.g.,* DKT 91, p. 5 (referring to "Defendants' Extensive Misappropriation"). But these word games do not take the place of evidence against Marrale. Yipit has failed to shoulder its evidentiary burden to show a likelihood of success on the merits against Marrale, and its request for preliminary injunctive relief against Marrale should be denied.

**B.**     <u>**Yipit Cannot Establish Irreparable Harm.**</u>

Yipit also cannot establish the most important prerequisite for the issuance of a preliminary injunction - irreparable harm.  To show irreparable harm, Yipit "must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Id.*  "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."  *Id.*  Here, Yipit cannot establish irreparable harm with respect to Marrale because: (1) its allegations of past alleged harms are insufficient to show irreparable harm; (2) Yipit cannot show likely imminent irreparable harm; (3) irreparable harm cannot be presumed or found in this case under the applicable law; and (4) Yipit's allegations of future potential harm are speculative at best.

1.     <u>Yipit's Allegations of Past Harms Are Insufficient to Establish Irreparable Harm</u>.

First, Yipit cannot establish irreparable harm because the only conduct it cites with respect to Marrale took place ten months ago.  "[I]njunctive relief to redress past alleged harms" "is not permitted."  *Manrique v. State Farm Mut. Auto. Ins. Co.*, No. 21-CV-224 (KMK), 2021 WL 5745717, at *9 (S.D.N.Y. Dec. 2, 2021).  *See also McGinnis v. Crissell*, No. 9:13-CV-1538 LEK/DJS, 2015 WL 5916472, at *1 (N.D.N.Y. Oct. 8, 2015) ("[A] finding of irreparable harm cannot be based solely upon past conduct.").  Indeed, "although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [it] is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

Here, Yipit's Motion against Marrale is based on events that took place ten months ago or longer.  Specifically, Yipit cites a recruiting meeting that happened on *April 10, 2024*, and one

Microsoft Teams chat from *May 16, 2024* that M Science voluntarily returned to Yipit in October 2024. *See* DKT 91, pp. 6-8; DKT 92-2, at YIP0000327-29. Yipit has not proffered any evidence at all that any alleged misappropriation of its trade secrets by Marrale has occurred since then or is occurring now. Accordingly, Yipit cannot establish irreparable harm.

2. <u>Yipit Cannot Show Likely Future Irreparable Harm</u>.

Second, Yipit cannot demonstrate that it is "likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d at 239. As an initial matter, Marrale has not used any of the information in the single Teams chat relied on by Yipit for any purpose. *See* Marrale Dec., ¶12. Further, he does not have access to the chat and does not intend to review it again other than as needed for this litigation. *Id.* He has no intention of using or disseminating the chat, or any information in it, in the future. *Id.* Marrale also did not receive any other information regarding Yipit's business or clients from Emmett. *See* Marrale Dec., ¶13. Accordingly, Yipit cannot possibly meet its burden to demonstrate that it is likely to suffer actual, imminent, non-speculative irreparable harm in the absence of an injunction against Marrale.

3. <u>Irreparable Harm Cannot Be Presumed or Found in this Case Under the Applicable Law</u>.

In its Motion, Yipit argues that irreparable harm should be presumed because "'the loss of trade secrets cannot be measured in money damages' as '[a] trade secret once lost, is of course, lost forever.'" DKT 91, p. 20 (citing *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) (per curiam)). That is not the law in the Second Circuit, however.

In *Faiveley Transp. Malmo AB v. Wabtec Corp.*, the Second Circuit explained that, despite the "passing observation" made in *FMC Corp.*, upon which Yipit relies, no "presumption of irreparable harm automatically arises upon the determination that a trade secret has been

9

misappropriated." 559 F.3d at 118. In rejecting the "presumption of irreparable harm" argument, the Second Circuit stated:

> A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriation of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets. Where a misappropriator seeks only to use those secrets- without further dissemination or irreparable impairment of value-in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury. Indeed, once a trade secret is misappropriated, the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge .... [W]here there is no danger that a misappropriator will disseminate proprietary information, "the only possible injury that [the] plaintiff may suffer is loss of sales to a competing product... [which] should be fully compensable by money damages."

*Id.* at 118-19 (citations and quotations omitted). *See also Passlogix, Inc. v. 2FA Tech., LLC*, No. 08 Civ. 10986, 2010 WL 2505628, at *10 (S.D.N.Y. June 21, 2010) (finding no irreparable harm where defendant used but did not disseminate trade secret to third parties).

Citing *Faiveley*, this Court recently found no irreparable harm where the plaintiff had shown only that the defendants sought to use the plaintiff's trade secrets "without further dissemination or irreparable impairment of value—in pursuit of profit," explaining that the Second Circuit has made clear that "an award of damages will often provide a complete remedy for such an injury," making the injunctive relief requested by the plaintiff inappropriate. *Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, No. 20-CV-9170 (ER), 2023 WL 2478159, at *6 (S.D.N.Y. Mar. 13, 2023) (quoting *Faiveley*, 559 F.3d at 118-119).

Under this clear precedent, irreparable harm cannot be found absent a threat that the alleged trade secrets will be disseminated, not just used. Apparently aware of this legal standard, Yipit half-heartedly argues that defendants might disseminate its trade secrets. DKT 91, pp. 20-21.

However, those conclusory allegations are unsupported by any actual evidence suggesting that Marrale possesses or might disseminate Yipit's purported trade secrets to any third party in the absence of an injunction. *Id.*

To the contrary, as set forth above and in Sections II.B and IV.A.2 of M Science's Memorandum of Law in Opposition to Yipit's Motion ("M Science's Opposition"), M Science and Marrale have taken measures to ensure not only that the minimal Yipit information from Emmett that Pinsky relayed to Marrale is not disseminated to a third party, but that any such Yipit information is not used by Marrale (or M Science) in any way. Courts in this Circuit have found no irreparable harm where, rather than threatening to disseminate the plaintiff's information, the defendants took measures to safeguard or return the plaintiffs' information. *See, e.g., TGG Ultimate Holdings, Inc. v. Hollett*, No. 16 CIV. 6289 (VM), 2016 WL 8794465, at *4–5 (S.D.N.Y. Aug. 29, 2016) (plaintiff had not demonstrated irreparable harm because plaintiff had not presented facts "showing an imminent danger that Defendants intend to disseminate such information to a wider audience or otherwise irreparably impair the value of those secrets," and where defendants agreed to return flash drives containing plaintiff's proprietary information).

Just weeks ago, this Court explained that a plaintiff had failed to demonstrate irreparable harm where there was nothing in the record showing that the defendants were "planning to 'disseminate [the trade] secrets to a wider audience or otherwise irreparably impair the value of those secrets.'" *ParTech, Inc. v. Jackson*, No. 24-CV-9381 (JAV), 2025 WL 343215, at *9 (S.D.N.Y. Jan. 29, 2025) (citing *Faiveley*, 559 F.3d at 118). In that case, ParTech sought a preliminary injunction against Jackson, a former employee, and Qu, Jackson's new employer, after discovering that Jackson had allegedly "downloaded a number of highly sensitive documents to his personal devices" and created a "full backup of his PAR provided laptop" that contained

ParTech's proprietary and confidential information. *Id.* at \*2. After declining to grant a preliminary injunction due to lack of personal jurisdiction, the Court addressed the issue of irreparable harm, explaining that it is "imperative" for a movant to demonstrate that there is a threat that allegedly stolen trade secrets "would be used in such a way that any harm could not be remedied through money damages," a "standard [that] could potentially be met by evidence of an actual or imminent threat to use the trade secrets to cause harm in unquantifiable ways for the plaintiff to compete." *Id. at* \*9 (citation and quotation omitted). Explaining that the defendants had "taken measures to safeguard PAR's proprietary information since this suit was filed," the Court concluded that ParTech would not be entitled to a preliminary injunction "[a]bsent some evidence that Qu or Jackson nonetheless have access to the stolen trade secrets and have an intent to disseminate or use those trade secrets in such a way as to cause irreparable harm" to ParTech. *Id.* (citing *Am. Airlines, Inc. v. Imhof*, 620 F. Supp. 2d 574, 580 (S.D.N.Y. 2009) (finding threat of irreparable injury neutralized when the alleged misappropriator offered to return or destroy all copies of proprietary and confidential information, as there was "no material risk that [defendant] will retain copies of the documents, much less ... disclose them")). Notably, the measures undertaken to safeguard ParTech's information were similar to those taken by M Science and included: Qu placing Jackson on administrative leave, suspending Jackson's access to Qu's systems, and turning relevant electronic devices over to a third-party vendor while negotiating a protocol to identify, segregate and remove ParTech's confidential information.

For the same reasons, Yipit cannot show irreparable harm here. Just like the defendants in *ParTech, Inc. v. Jackson*, Marrale and M Science have taken measures to safeguard Yipit's purportedly confidential information since receiving demand letters from Yipit. *See, e.g.,* Marrale Dec., ¶¶12, 14-17; *see also* M Science's Opposition, Sections II.B and IV.A.2.

Thus, Yipit has not and cannot demonstrate that Marrale has any intent to disseminate or use any Yipit trade secrets in such a way as to permit the existence of irreparable harm to be presumed.

4.   Yipit's Speculation About Marrale Using Information About a Data Vendor Does Not Establish Irreparable Harm.

Yipit's Motion identifies only a single specific purported trade secret related to which it alleges it may suffer future irreparable harm.  It argues that "the misappropriation of Yipit's contractual terms with ███ creates a concrete risk that M Science will approach [███] with a better deal or terms and put Yipit's relation or deal at risk." DKT 91, p. 21 (quoting DKT 68, ¶12). This wild accusation by Yipit and Ms. Meltzer has no basis in reality.

First of all, Emmett's apparent disclosure that Yipit contracted with ████████████ ███ took place in May of 2024, nearly ten months ago.  Marrale Dec., ¶4.  Yet, Yipit does not allege that the information has been used in any way by Marrale or M Science since then.  Why would there be a threat now?  Further, Marrale and the other current M Science employee that received the information have confirmed that they no longer have it and will not use or disclose it. *See* Marrale Dec., ¶12; *see also* Faustini Dec., ¶16.

Just as importantly, ███'s availability as a data vendor is not a secret to M Science.  Far from it.  ███ is a widely known consumer rewards app that markets its consumer data to alternative data companies, like Yipit and M Science.  *See* Marrale Dec., ¶6.  In fact, M Science had a contract to license data from ███ from 2021 until September 2023.  *Id.*  M Science chose to terminate that contract, prior to its scheduled expiration, in September  2023, just eight months before the Teams chat cited by Yipit, because it did not find ███'s data to be useful for its research.  *Id.*

Accordingly, the fact that Yipit has a contract with ███ is meaningless to Marrale and M Science. *Id.* If M Science wanted to use ███, it has an established relationship and the means and know-how to do so. The reality is that M Science had already decided it did not want to use ███. *Id.* Accordingly, Yipit's speculation that M Science might approach ███ with a better deal or terms has no basis in reality and certainly does not meet Yipit's burden to demonstrate irreparable harm under Second Circuit law.[3] Indeed, the law is clear that Yipit cannot establish entitlement to an injunction based on speculation. *Faiveley*, 559 F.3d at 118; *see also Lentjes Bischoff GmbH v. Joy Env't Techs., Inc.*, 986 F. Supp. 183, 188 (S.D.N.Y. 1997) (denying request for injunction where plaintiff's "assertion that it [would] suffer irreparable injury absent a preliminary injunction [was] not merely speculation, it [was] speculation without any reasonable factual basis," noting that "Courts have repeatedly rejected more plausible theories of irreparable injury").

### C. Neither the Balance of the Equities, Nor the Public Interest, Favor Yipit.

"In determining whether the balance of the equities tips in the plaintiff's favor and whether granting a preliminary injunction would be in the public interest, the Court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *TomGal*, 2022 WL 17822717, at *5 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.*

---

[3] In addition, the only detail Emmett disclosed regarding Yipit's contract with ███ was its length. As such, it is not possible for M Science to approach ███ with "a better deal or terms."

Here, the balance of the equities does not tip in Yipit's favor because Yipit has not shown that it will be irreparably harmed by any action of Marrale or that it is likely to succeed on the merits of its claims against Marrale. *See id.* at * 6 (balance of equities tipped in defendant's favor because, *inter alia*, the plaintiff had not shown irreparable harm). Yipit argues that Marrale has "no legitimate interests that would be harmed" by the requested injunction because "it is no hardship" for Marrale to refrain from using Yipit's trade secrets or trade secrets to "lure away" Yipit's customers, or to return Yipit's trade secrets. DKT 91, pp. 22-23. But Marrale has not received or used any of Yipit's trade secrets for any purpose and has no intention of using any of Yipit's trade secrets for any reason in the future. He has also returned the sole document he had containing any information regarding Yipit's clients or business that was disclosed by Emmett. Issuing an injunction that suggests otherwise would cause reputational harm to Marrale, because this case is being closely followed by and repeatedly reported on in the press, and any order is likely to be reviewed by M Science's clients and prospects.[4] Indeed, given the utter lack of evidence against him, it appears that Yipit added Marrale to this case solely in an attempt to falsely impugn his character in the public eye.

Yipit also argues that an injunction against Marrale "would advance the 'substantial public interest in the protection of trade secrets.'" DKT 91, p. 24 (quoting *BaseCap Analytics Inc. v. Amenn*, No. 1:23-CV-09370-MKV, 2023 WL 8113524, at *4 (S.D.N.Y. Nov. 22, 2023) (citation omitted)). To the contrary, because there is no evidence that Marrale is in possession of or in danger of disseminating any Yipit trade secrets, an injunction would not serve the public interest

---

[4] *See, e.g.*, https://www.businessinsider.com/yipit-complaint-legal-fight-with-jefferies-m-science-2025-1.

here. *See, e.g., TomGal*, 2022 WL 17822717, at *6 (public interest in enforcing contracts not undermined where plaintiffs could pursue damages and little danger alleged trade secrets would be widely disseminated).

**D.     Yipit's Motion Should Be Denied Because Yipit Has Not Come to This Court With Clean Hands.**

For all the same reasons as set forth in Section IV.C. of M Science's Opposition, Yipit's Motion should be denied because it comes to Court seeking equity when it has unclean hands.

**E.     Yipit's Proposed Injunction Order Is Not Sufficiently Specific.**

Finally, for the same reasons set forth in Section IV.E. of M Science's Opposition, Yipit's Motion should be denied because its requested injunction order (DKT 89) fails to meet the requirements of specificity set forth in Federal Rule of Civil Procedure 65(d)(1).

## IV.     CONCLUSION

For all the reasons set forth herein, Marrale respectfully requests that the Court deny Yipit's Motion in its entirety.

Dated:  March 7, 2025                                    Respectfully submitted,

*/s/ Andrew J. Shapren*
**BUCHANAN INGERSOLL & ROONEY PC**
Andrew J. Shapren (admitted *pro hac vice*)
Anne E. Kozul (admitted *pro hac vice*)
50 South 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
Telephone: (215) 665-3853
andrew.shapren@bipc.com

Stephen W. Kelkenberg
(NY Reg. No. 4096269)
501 Grant Street, Suite 200
Pittsburgh, Pennsylvania 15219-4413
Telephone: (716) 725-4349
stephen.kelkenberg@bipc.com

*Attorneys for M Science LLC and Michael Marrale*

**CERTIFICATION OF COMPLIANCE**

Pursuant to Paragraph II(D) of the Court's Individual Practices, I hereby certify that this brief complies with Judge Koeltl's formatting rules, and that the total number of words in this memorandum of law, excluding the cover page, table of contents, table of authorities, signature line, and certification of compliance is 5,015.

*/s/ Andrew J. Shapren*