# Buchanan

**Andrew J. Shapren**
215 665 3853
andrew.shapren@bipc.com

Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA  19102-2555
T 215 665 8700
F 215 665 8760

March 31, 2025

*Via ECF*
The Honorable John G. Koeltl
United States District Court
500 Pearl St.
New York, NY 10007-1312

      Re:    *Yipit LLC v. Emmett et al.*, Case No. 24-cv-07854 (JGK) (RFT)
              Request for Pre-motion Conference

Dear Judge Koeltl:

      We represent Defendants M Science LLC ("M Science") and Michael Marrale in the above-referenced action.  Pursuant to Your Honor's Individual Rule III.B., we submit this letter to request a pre-motion conference in connection with M Science's anticipated motion to dismiss Yipit LLC's ("Yipit's") claim for tortious interference with contract (Count IV of the Second Amended Complaint (Dkt. No. 84, "Complaint").

## I.   Background

      In its Complaint, Yipit asserts several causes of action against M Science, and others, related to its former employee Zachary Emmett's brief stint of employment at M Science.  Among other things, Yipit alleges that M Science, through Alexander Pinsky, tortiously interfered with the Proprietary Information, Inventions and Non-Solicitation Agreement between Yipit and Emmett (the "Agreement").

      In pertinent part, Yipit alleges that:

(1)    Yipit and Emmett entered into the Agreement on August 6, 2019 (Dkt. No. 84 ¶¶ 40, 181);

(2)    "Mr. Pinsky was aware of Mr. Emmett's contract and its terms, having signed a materially identical contract with Yipit as a condition of his own employment within weeks of when Mr. Emmett signed his agreement." (Dkt. No. 84 ¶¶ 182; 40);

(3)    Emmett breached the Agreement (Dkt. No. 84 ¶¶ 160, 168-179;183);

(4)    "Mr. Pinsky intentionally and improperly facilitated Mr. Emmett's breach of the agreement by soliciting Yipit's Proprietary Information from Mr. Emmett, including

Hon. John G. Koeltl
March 31, 2005
Page - 2 –

            by requesting information on individual customers and by requesting a 'general guide' over Facebook" (Dkt. No. 84 ¶ 184); and

(5)    "At the time when he induced these breaches, Mr. Pinsky was engaged generally in M Science's business and was a superior officer of M Science . . . ." (Dkt. No. 84 ¶ 189).

## II. Yipit's Claim for Tortious Interference Fails as a Matter of Law Because Yipit Failed to Plead M Science's Actual Knowledge of the Agreement

To state a claim for tortious interference with a contract, a plaintiff must plead: "(i) the existence of a valid contract between the plaintiff and a third party; (ii) the defendant's knowledge of the contract; (iii) the defendant's intentional procurement of the third-party's breach of the contract without justification; (iv) actual breach of the contract; and (v) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006). "New York law is clear on its requirement that a defendant charged with tortiously interfering with a contractual relationship have actual knowledge of the breached contract." *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778 at 796 n.13 (S.D.N.Y. 2008); *Bogoni v. Friedlander*, 197 A.D.2d 281, 287 (1st Dep't 1994) ("It suffices to say that the operative consideration for tortious interference with contractual relations is the state of a defendant's knowledge at the time breach of a valid contractual obligation is induced.").

Notably absent from the Complaint is *any* allegation that either M Science or Pinsky had *actual* knowledge of the Agreement. The only allegation relating to M Science or Pinsky's knowledge of the agreement is that "Pinsky was aware of Mr. Emmett's contract and its terms, having signed a materially identical contract with Yipit as a condition of his own employment." Dkt. No. 84 ¶ 182. In other words, Yipit is not claiming that Mr. Pinsky actually knew the existence or terms of Mr. Emmett's contract with Yipit, but that Mr. Pinsky should have speculated that Yipit and Mr. Emmett entered into the same contract that Mr. Pinsky and Yipit entered into years earlier.

Courts routinely dismiss claims for tortious interference based on general and conclusory allegations, like Yipit's, that a party was aware of the underlying contract. *TrueSource LLC v. Niemeyer*, 2021 WL 9507721, at *4 (E.D.N.Y. 2021) (holding that the plaintiff failed to plead actual knowledge by alleging that that defendant knew the employee was "subject to the 2018 Non-Compete Agreement as well as other restrictive covenants" because "[t]his by definition, is a conclusory allegation that is not entitled to any consideration whatsoever"); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 2018 WL 1273343, at *11 (S.D.N.Y. 2018) (holding that the "pleadings fail[ed] as a matter of law" because "[g]eneral allegations that a party 'knew or should have known' about the contract in question fall short"); *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, 2016 WL 5414979, at *4 (S.D.N.Y. 2016) (granting summary judgment dismissing tortious interference claim despite email correspondence between defendant and breaching party referencing payment made "as per the [counterclaim plaintiff]/[breaching party] engagement's terms and conditions" because "[a]lthough this letter indicates that

Hon. John G. Koeltl
March 31, 2005
Page - 3 –

Defendants may have had some knowledge of an agreement between Plaintiff and [breaching party] with respect to the success fee, it does not directly refer to the Engagement Letter and it does not show actual knowledge on the part of [Defendant] about the contract, much less its terms"); *N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*, 2013 WL 1500333, at *4 (S.D.N.Y. 2013) (dismissing tortious interference claim where the counterclaimant alleged that the defendant had general knowledge of the contract but failed to allege "knowledge of [the] specific covenants" that were breached).

Yipit's assertion that Pinsky had signed a "materially identical" agreement falls short of asserting that Pinsky had actual knowledge of the Agreement. Regardless of whether the two agreements were identical, Yipit fails to allege that Pinsky *actually knew* that Emmett and Yipit had entered into an identical agreement and, thus, had actual knowledge of the Agreement's terms. Allegations that a party "should have known" or has "constructive" knowledge about an agreement's terms are insufficient to establish actual knowledge. *Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013) ("[C]onstructive knowledge is inadequate to demonstrate [a party's] knowledge for purposes of tortious interference."); *Medtech Prods.*, 596 F. Supp. 2d at 813-14 (plaintiff's allegations that defendant "knew or should have known" about the contracts at issue because defendant was "a sophisticated entity well aware of the industry practice of securing confidentiality agreements" amounted to "mere speculation"); *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 496 (S.D.N.Y. 2002) (rejecting the argument that "actual knowledge" of a specific contract can be presumed because such contracts were "a matter of course" and "common practice" in employment).

Yipit's failure to plead actual knowledge of the Agreement by either M Science or Pinsky is a fatal defect which mandates dismissal of its tortious interference claim.

Respectfully submitted,

Andrew J. Shapren