

James Halter
305.476.5141 (Direct)
646.970.4770 (Main)
305.675.7499 (Direct Facsimile)
jhalter@rascoklock.com

April 15, 2025

**BY E-FILING**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:    *Yipit, LLC v. Emmett et al.*
               Case No. 24 Civ. 07854 (JGK)

Dear Judge Koeltl:

      We represent Defendant Alexander Pinsky in the above-referenced matter. We write pursuant to Section III.B of the Court's Individual Practices to request a pre-motion conference in anticipation of Mr. Pinsky filing a motion to dismiss Count 3 (Breach of Contract), Count 4 (Tortious Interference with Contract), and Count 9 (Conspiracy) of the Second Amended Complaint (Dkt. No. 84) as to him.

      As the Court is aware, the Second Amended Complaint alleges that, between March 2024 and approximately June 2024, Defendant Zachary Emmett – then an employee of Plaintiff Yipit, LLC – took Yipit's confidential information and shared that information with Mr. Pinsky and others who were, at the time, working for M Science.

      With respect to the Breach of Contract claim (Count 3), Yipit identifies a Proprietary Information, Inventions and Non-Solicitation Agreement that Mr. Pinsky signed in connection with his employment with Yipit. The agreement is attached to the Second Amended Complaint as Exhibit B. (Dkt. No. 84-2). Mr. Pinsky worked for Yipit from August 2019 to December 2022. Yipit alleges that Mr. Pinsky breached that agreement by failing to hold "Yipit's proprietary information in strict confidence." (Dkt. No. 84, ¶ 176). As defined in the referenced agreement, however, "Proprietary Information shall mean any and all confidential and/or proprietary knowledge, data or information of the Company, its affiliates, parents and subsidiaries, whether having existed, now existing, or ***to be developed during my employment***." (Dkt. No. 84-2 at § 1.2 (emphasis added)). In other words, the information protected by the contract is only that information that existed prior to and during Mr. Pinsky's employment.

      In response to Pinsky pointing out that the allegation was deficient by way of a pre-motion conference letter directed to the initial complaint, Yipit has twice amended the complaint such that it now includes the allegation that "The Proprietary Information that Mr. Pinsky used

The Honorable John G. Koeltl -2- April 15, 2025

and/or disclosed included information that existed during his tenure as a Yipit employee, including (by way of example, not limitation) the identity of then-existing Yipit customers and hundreds of lines of data in the "[Customer1] Overlap" spreadsheet," (which is itself, a list of customers according to the Second Amended Complaint). (Dkt. No. 84, ¶¶ 69(b), 176). This new allegation is not a plausible interpretation of the agreement and, regardless, does not remedy the defect.

Yipit is attempting to twist the meaning of the agreement such that information that Mr. Emmett alleged took in 2024 regarding Yipit's then-existing customers is retroactively added to the contractual definition of Mr. Pinsky's contract if that information also happens to include customers that also existed during Mr. Pinsky's employment. That is not a plausible definition and not consistent with the language which requires that the information "existed, now existing, or *to be developed during [Mr. Pinsky's] employment*" with no future term included. (Dkt. No. 84-2 at § 1.2). As such, Count 3 does not state a cause of action against Mr. Pinsky and should be dismissed.

With respect to Tortious Interference with a Contract (Count 4), "New York law is clear . . . that a defendant charged with tortiously interfering with a contractual relationship [must] have actual knowledge of the breached contract." *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778 at 796 n.13 (S.D.N.Y. 2008). Yipit attempts to satisfy this requirement by vaguely alleging Mr. "Pinsky was aware of Mr. Emmett's contract and its terms, having signed a materially identical contract with Yipit as a condition of his own employment." (Dkt. No. 84 ¶ 182). Yipit is thus claiming that Mr. Pinsky presumably *assumed* that Mr. Emmett had the exact same contract (even though they worked on different teams while at Yipit (Dkt. No. 84 ¶ 39)). That is not a sufficient allegation as it fails to establish that Mr. Pinsky had actual knowledge of Mr. Emmett's contract.

Further, as Mr. Pinsky pointed out with respect to the initial complaint, under New York law, it is well established that "a mere conspiracy to commit a [tort] is never of itself a cause of action." *Alexander & Alexander, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) (quoting *Brackett v Griswold*, 112 N.Y. 454, 467 (1889)). Thus, Count 9 (Conspiracy) cannot state a cause of action and should be dismissed. Yet Yipit persists in including it in the multiple iterations of the complaint since.

Mr. Pinsky currently has until today to respond to the Second Amended Complaint. Thus, in addition to a pre-motion conference, Mr. Pinsky further requests that his time to respond be extended until a reasonable briefing schedule is set at the requested pre-motion conference.

Respectfully submitted,
RASCO KLOCK PEREZ & NIETO, LLC

By: _____
James Halter

cc: Counsel of Record (by e-filing)