Akin Gump Strauss Hauer & Feld LLP
1999 Avenue of the Stars
Suite 600
Los Angeles, CA 90067

T   +1 310.229.1000
F   +1 310.229.1001
akingump.com



**Laura Danielle Smolowe**
+1 310.229.1040/fax: +1 310.229.1001
lsmolowe@akingump.com

April 22, 2025

**VIA ECF**

The Honorable John G. Koeltl
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

   Re:  <u>*Yipit, LLC d/b/a YipitData v. Emmett et al.*, **1:24-cv-07854 (JGK) (RFT)**</u>

Dear Judge Koeltl:

  We represent Plaintiff Yipit, LLC d/b/a YipitData ("Yipit") in the above-captioned matter and write in response to Defendant Alexander Pinsky's April 15, 2025 letter requesting a pre-motion conference to discuss Mr. Pinsky's proposed motion to dismiss Count 3 (Breach of Contract), Count 4 (Tortious Interference with Contract), and Count 9 (Conspiracy) of the Second Amended Complaint (the "April 15 PMC Request"). Dkt. 198. As it relates to Count 3 and Count 9, Mr. Pinsky raises nearly identical arguments that he raised in his pre-motion conference request on November 13, 2024 (the "November 13 PMC Request"). *See* Dkt. 45. On November 21, 2024, we promptly addressed Mr. Pinsky's arguments (the "November 21 Response"). *See* Dkt. No. 48.

  **I.**  <u>**Yipit Alleges Sufficient Facts to State its Breach of Contract Claim**</u>

  Mr. Pinsky reasserts that the breach of contract claim (Count 3) against him must be dismissed. In the November 13 PMC request, Mr. Pinsky stated that his contract with Yipit defined "Proprietary Information" to include information "whether having existed, now existing, ***or to be developed during [his] employment***," and he argued that the information at issue in this lawsuit "could [not] have existed during [his] employment." Dkt. No. 45. To address Mr. Pinsky's contention, Yipit amended its Complaint to allege explicitly that the Proprietary Information that Mr. Pinsky misappropriated did, in fact, exist while he worked at Yipit. *See* First Am. Compl., Dkt. No. 74 ¶ 53; *see also* Second Am. Compl. ("SAC"), Dkt. No. 84 ¶ 69. Specifically, Yipit expressly stated that the "[Customer1] Overlap" document Mr. Pinsky used and/or disclosed contained a list of all Yipit's investor customers by category, which was compiled over several years, with the oldest entries dating back as far as June 2021 (while Mr. Pinsky was at Yipit). First



The Honorable John G. Koeltl
Southern District of New York
April 22, 2025
Page 2

Am. Compl. ¶ 53(b); SAC ¶ 69(b).  As Mr. Pinsky was employed at Yipit from August 2019 to December 2022, *see* Second Am. Compl. ¶¶ 39, 47, his proposed motion to dismiss this count is therefore meritless.

### II. Yipit Adequately Alleges that Mr. Pinsky Tortiously Interfered with Mr. Emmett's Contract

Mr. Pinsky next asks this Court to dismiss Yipit's tortious interference claim (Count 4) against him, claiming that Yipit fails to establish that Mr. Pinsky had actual knowledge of the "Proprietary Information, Inventions and Non-Solicitation Agreement" (the "Agreement") between Mr. Emmett and Yipit.  Dkt. No. 198 at 2.  Yipit requires its newly hired employees to sign the Agreement as a condition of employment with Yipit.  *See* SAC ¶ 36(a).  The Agreement contains nondisclosure provisions.  *See id.* ¶¶ 41, 43.  Mr. Pinsky tortiously interfered with those nondisclosure provisions when he intentionally and improperly facilitated Mr. Emmett's breach of the Agreement by soliciting Yipit's Proprietary Information from Mr. Emmett, including by requesting information on individual customers over Facebook.  *See id.* ¶ 184.

Mr. Pinsky argues that the SAC fails to sufficiently plead that he had actual knowledge of the Agreement.  Dkt. No. 198 at 2.  At this pleading stage, however, Yipit "need only allege that [Mr. Pinsky] knew of the existence of the contract, and at most some knowledge of its terms and conditions."  *Jordan's Ladder Legal Placements, LLC v. Major, Lindsey & Africa LLC*, No. 21 CV 7124 (CM), 2022 WL 1500772, at *7 (S.D.N.Y. May 12, 2022).  Mr. Pinsky need only have "some knowledge of the terms and conditions of the allegedly-interfered-with contract but perfect or precise knowledge is not required."  *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 249 (S.D.N.Y. 2020).

Yipit has alleged that within weeks of when Mr. Emmett signed his Agreement, Mr. Pinsky signed a materially identical contract with Yipit as a condition of his own employment.  SAC ¶ 182.  Mr. Emmett signed his agreement on August 6, 2019, and Mr. Pinsky signed his on August 13, 2019.  *Id* ¶ 40.  Both were hired into the same role, Sales Executive, and had similar responsibilities, including access to much of Yipit's trade secret information and the attendant responsibility of safeguarding that information.  *Id.* ¶¶ 39, 45.  Mr. Pinsky was well aware of the existence of this Agreement and had some knowledge of the terms and conditions of the Agreement.  *Id*. ¶¶ 36(a), 38-45.  Mr. Pinsky's feigned ignorance of the Agreements is also belied by his comments to Emmett regarding Yipit's Deletion Attestation Form, which departing employees such as Emmett are required to sign.  *Id.* ¶¶ 36(e), 103.  When Emmett asked whether Pinsky had signed one, Pinsky responded: "They don't police it. It [*sic*] a check the box. More like research or real unique stuff. But not that i [*sic*] recall").  *Id.* ¶ 103.



The Honorable John G. Koeltl
Southern District of New York
April 22, 2025
Page 3

Yipit has pleaded more than enough to lead to an inference that Mr. Pinsky knew that Mr. Emmett, too, has a confidentiality agreement.

### III.   Yipit States a Valid Conspiracy Claim Under New York Law

Finally, Mr. Pinsky asks this Court to dismiss Yipit's conspiracy claim (Count 9) against him on the grounds that "a mere conspiracy to commit a [tort] is never of itself a cause of action." Dkt. 198 at 2 (quoting *Alexander & Alexander*, *Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)). Mr. Pinsky is once again misinterpreting this legal rule. *See* November 21 Response, Dkt. No. 48 at 2. While "New York does not recognize an *independent* cause of action for conspiracy," *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474 (N.Y. App. Div. 2010) (emphasis added), "New York law *does* recognize a derivative cause of action for civil conspiracy that is predicated on another tort," *Internet L. Libr., Inc. v. Southridge Cap. Mgmt.*, *LLC*, 223 F. Supp. 2d 474, 490 (S.D.N.Y 2002) (emphasis added), *rejected on other grounds by ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007).

Here, Yipit's conspiracy claim is predicated on the substantive tort of trade secret misappropriation. The Second Amended Complaint sets forth allegations and contains direct evidence of a quid pro quo (i.e., an agreement), in which Mr. Pinsky helped Mr. Emmett obtain an interview, a job offer, and a favorable compensation package at M Science. In exchange, Mr. Emmett repeatedly provided Yipit's trade secrets to M Science personnel at Mr. Pinsky's Request. SAC ¶ 229. This conduct raises (more than) a plausible inference that Mr. Pinsky agreed to engage and did engage in a conspiracy to undermine Yipit's business, misappropriate its trade secrets and proprietary information, and use that information to benefit M Science and himself.

\* \* \*

For the foregoing reasons, Yipit's Second Amended Complaint successfully states claims against Mr. Pinsky for, *inter alia*, breach of contract, tortious interference with contract, and conspiracy. Mr. Pinsky's proposed motion to dismiss would fail.

Sincerely,

Laura D. Smolowe

cc: All Counsel (via *ECF*)