# Buchanan

**Andrew J. Shapren**
215 665 3853
Andrew.shapren@bipc.com

Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA  19102-2555
T 215 665 8700
F 215 665 8760

July 23, 2025

**VIA ECF**
The Honorable Robyn F. Tarnofsky
United States Magistrate Judge
500 Pearl Street
New York, NY 10007

      Re:    *Yipit LLC d/b/a YipitData v. Emmett et al; 1:24-cv-07854 (JGK)(RFT)*

Dear Judge Tarnofsky:

      We represent Defendant M Science LLC ("M Science") and submit this letter pursuant to Your Honor's Individual Rules III(B) in opposition to the letter motion filed by Plaintiff Yipit, LLC ("Yipit") (Dkt. 289). For the reasons set forth herein, the Court should deny Yipit's motion in its entirety.

      **I.**    **Relevant Background**

      This matter arose in the Summer of 2024, when Yipit sent M Science letters (1) alleging that Emmett had shared information regarding Yipit's clients with M Science employees in the time leading up to Emmett's June 2024 resignation from Yipit, and (2) demanding that M Science "investigate" these allegations. After learning of the evidence supporting Yipit's allegations, M Science took several measures to remedy Emmett's conduct.  Those measures included, as Yipit had demanded, conducting an investigation, at the direction of its in-house and outside counsel, to locate Yipit client or business information that Emmett had shared with any M Science employee and voluntarily returning that information to Yipit, regardless of whether the information could reasonably be considered legally confidential or proprietary. Additional remedial measures undertaken by M Science included (1) severing its employment relationships with Emmett and with two M Science managers, Alexander Pinsky ("Pinsky") and Valentin Roduit ("Roduit") and (2) repeatedly instructing its employees that any information regarding Yipit shared by Emmett was not used to be used or disclosed.  In October 2024, after Yipit had initiated this action against Emmett and Pinsky, M Science provided Yipit with the results of its investigation and voluntarily returned the documents it had located that appeared to contain information regarding Yipit's business and clients, provided by Emmett to M Science personnel. *See* Dkt. 92-1 and 92-2.

      Yipit filed its Second Amended Complaint ("SAC") on January 30, 2025, adding M Science, its CEO, Michael Marrale, and Roduit as parties to this case.  *See* Dkt. 84. The next day, Yipit moved for a preliminary injunction against all parties. *See* Dkt. 91.  In opposition to Yipit's request for a preliminary injunction, M Science argued, among other things, that Yipit had failed

Hon. Robyn F. Tarnofsky
July 23, 2025

to establish irreparable harm because (1) Yipit relied on allegations of past harm, which are insufficient to establish irreparable harm (2) Yipit could not show likely actual and imminent future harm (3) Yipit's allegations of lost customers were speculative, and even if not, Yipit had a remedy at law, (4) irreparable harm could not be presumed or found under the applicable law and (5) Yipit's delay in seeking injunctive relief precluded a finding of irreparable harm. *See* Dkt. 133, pp. 8-17. In arguing the second item in the list above, M Science relied primarily on the fact that Yipit had adduced no evidence of any actual or imminent threat of future harm. M Science further relied, not on the sufficiency of its good faith investigation, but on the various remedial measures it took in response to Yipit's allegations in the summer and fall of 2024, including the facts that (1) Emmett, Pinsky, and Roduit were no longer employed by M Science, (2) M Science had voluntarily returned to Yipit any documents it had located that contained information regarding Yipit's business or clients that Emmett provided to any M Science personnel, (3) M Science had directed its employees in possession of any such documents to delete them, (4) M Science had provided declarations from relevant employees confirming that they could not and would not use any such information, and (5) M Science had directed its sales personnel not to use any Yipit information received from Emmett. *See* Dkt. 133, pp. 9-11. To the extent M Science addressed its investigation, it was only to respond to Yipit's repeated argument that the investigation was "woefully inadequate." *See e.g.* Dkt. 91, p. 18. On May 7, 2025, this Court denied Yipit's motion for a preliminary injunction. *See* Dkt. 230.

On June 6, 2025, M Science filed its Answer and Affirmative Defenses ("Answer"). *See* Dkt. 250. Contrary to Yipit's allegation that M Science is "selectively relying on certain parts of the investigation as prominent features of its defense," (Dkt. 289, at p. 1), none of M Science's affirmative defenses rely on the investigation it undertook in any way. Indeed, M Science's Answer references the investigation only to admit *Yipit's allegations* in the SAC that M Science conducted an investigation and that it had voluntarily returned information identified in the course of its investigation. *See* Dkt. 250, ¶131.

On May 13, 2025, Yipit served its First Requests for the Production of Documents ("RFP") directed to M Science and on May 28, 2025, Yipit served its First Set of Interrogatories directed at M Science. *See* Dkt. 289, p. 3. In responding to several of Yipit's requests for production, M Science referenced the fact of its prior investigation in the context of its response that it had already produced responsive documents, *i.e.,* the documents M Science had previously voluntarily returned to Yipit. *See* Dkt. 289-2, at Responses to RFP Nos. 6, 8, 12, and 22. Notably, M Science also agreed to produce additional responsive documents located during the litigation. *Id.*

With its instant motion, Yipit seeks to compel M Science to respond to Yipit's RFP No. 13 and Yipit's Interrogatory Nos. 12 and 13. Interrogatory Nos. 12 and 13 ask M Science to "describe in detail" its investigation, including the "substance of communications" relevant to its investigation:

> **Interrogatory No. 12:** Describe in detail the purported investigation(s) M Science conducted into the data Defendant Emmett provided to M Science in connection with Defendant Emmett's employment with M Science or any related audits, investigations, or forensic analyses. For purposes of this Interrogatory, "describe in

2

> detail" means to provide a list of the individuals who were involved in the investigation(s) and detailed descriptions of the dates, scope (including what exactly was searched and the search terms used), and findings of the investigation(s).
>
> **Interrogatory No. 13:** Describe in detail the "investigations" Joseph Napoli references in his declaration dated March 7, 2025 (Dkt. Nos. 146 and 155, ¶¶ 17-19). For purposes of this Interrogatory, "describe in detail" means to identify the individuals with whom Mr. Napoli communicated in connection with these investigations, list the dates of those communications, describe those individuals' roles in the investigations, describe the substance of the communications, and identify all documents Mr. Napoli reviewed in connection with the drafting of this declaration.

Dkt. 298-2.

M Science objected to Interrogatory Nos. 12 and 13 on various grounds, including that they are beyond the scope of permissible interrogatories pursuant to Local Rule 33.3. M Science also objected to Interrogatory Nos. 12 and 13 on the basis of the attorney-client privilege, the attorney work-product doctrine, joint defense or common interest doctrine or any other applicable privilege, as M Science's investigation referenced in these Interrogatories was conducted and directed by M Science's in-house and outside counsel. M Science further objected on the grounds that these Interrogatories are overbroad and seek information that is not relevant to this matter and beyond the scope of Plaintiff's claims, and therefore, seek information beyond the scope of Rule 26(b).

RFP No. 13 seeks "All Documents and Communications" regarding M Science's investigation:

> **RFP No. 13:** All Documents and Communications regarding the "good faith investigation to locate all Yipit client or business information that Emmett shared with any M Science employee" You purportedly conducted, as described in Your Memorandum of Law in Opposition to Yipit's Motion for a Preliminary Injunction (Dkt. 134) at page 1, and Any related audits, investigations, or forensic analyses.

Dkt. 298-3.

M Science objected to RFP No. 13 on the basis of the attorney-client privilege, the attorney work-product doctrine joint defense or common interest doctrine or any other applicable privilege, as M Science's good faith investigation referenced in the request was directed by M Science's in-house and outside counsel. M Science also objected on the grounds that it is overly broad, unduly burdensome and not proportional to the needs of the case given it seeks "all Documents and Communications" regarding the investigation with no limitations whatsoever. Subject to and without waiving those objections, M Science agreed to produce and has produced certain non-privileged documents regarding its investigation, such as correspondence from M Science's counsel to counsel for Yipit regarding its investigation and has referred Yipit to the documents it

Hon. Robyn F. Tarnofsky
July 23, 2025

located as a result of its investigation and voluntarily returned to Yipit. M Science has also produced unredacted versions of those documents.

Yipit now seeks the production of privileged documents regarding M Science's investigation including "documents to explain which employees and/or third parties were interviewed and as to what topics, what these persons reported to M Science, which documents were searched for and with what search terms, which documents were reviewed, and any findings of the investigation." Dkt. 289, p. 4. Yipit also seeks discovery regarding "the scope and depth of M Science's internal investigation." *Id.* Yipit's letter motion should be denied in its entirety because the additional discovery sought by Yipit's motion is clearly protected by the attorney-client privilege and/or work product doctrine. Furthermore, to the extent that Interrogatory Nos. 12 and 13 seek non-privileged information, a deposition, rather than an interrogatory, is the more practical method of obtaining such information. Finally, if granted at all (and it should not be), the requests sought by Yipit's letter motion should be limited to specific non-privileged documents or information, the production of which is proportional to the needs of the case.

## II. M Science Should Not Be Compelled to Produce Privileged Documents or Communications.

M Science should not be compelled to produce its privileged documents or communications in response to RFP No. 13 and/or Interrogatory Nos. 12 and 13. It is well settled that the attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). "The privilege protects both the advice of the attorney to the client and the information communicated by the client that provides a basis for giving advice." *Felder v. Warner Bros. Discovery*, No. 23 CIV. NO. 08487 (AT) (GS), 2025 WL 1718098, at *12 (S.D.N.Y. June 20, 2025) (citation and quotations omitted). Notably, the attorney client privilege "may also encompass fact investigations." *In re financialright GmbH*, No. 17-MC-105 (DAB), 2017 WL 2879696, at *4 (S.D.N.Y. June 22, 2017).

"The attorney work-product doctrine protects from disclosure 'materials prepared in anticipation of litigation by a party, or the party's representative, absent a showing of substantial need.'" *Id.* (quoting *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995) (additional citation and quotations omitted)). "[T]hree conditions must be fulfilled in order for work product protection to apply. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Id.* (citation and quotations omitted). "Thus, materials produced in connection with an internal investigation may be protected under the work product doctrine if the investigation was conducted in anticipation of litigation." *Id.* (citation and quotations omitted).

Here, both the attorney-client privilege and work product doctrine apply to documents and communications related to M Science's investigation. First, the investigation was conducted and directed by M Science's in-house and outside counsel for the purpose of providing legal advice to the company concerning its legal risks in connection with Yipit's allegations and the strategy for responding to those allegations. Second, M Science reasonably anticipated litigation at the time of

4

the investigation, given that in the demand letters sent to M Science in July and August 2024, Yipit's attorneys explicitly stated they had been engaged as "litigation counsel," and threatened Yipit's "right to take appropriate legal action," against M Science. *See e.g.*, Dkt. 15-1 and 15-4. Under these circumstances, the attorney work-product doctrine also attaches. Indeed, Yipit does not seriously contend that the documents and communications sought are not privileged, only that M Science has "waived" any such privilege.

### III. M Science Is Not Using Privilege as a "Sword" and Has Not Waived its Privilege as to its Investigation.

Contrary to Yipit's arguments, M Science is not relying on its investigation as both a "sword" and a "shield" such that would trigger any waiver of attorney-client privilege or work product doctrine here. This court has recognized that "the [attorney-client] privilege may implicitly be waived when [a] defendant asserts a claim that in fairness requires examination of protected communications." *Callahan v. HSBC Sec. (USA) Inc.*, No. 22-CV-8621 (JPO), 2025 WL 1404492, at *1 (S.D.N.Y. May 15, 2025) (citation omitted). However, in determining "whether fairness requires the forfeiture of a privilege, courts must consider the notion of unfairness to the adversary that results when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *Id.* Such a determination "is made on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Id.*

Here, contrary to Yipit's assertions, M Science has not "placed its internal investigation of its employees' conduct at issue in this litigation" in any way that in fairness requires the production of its privileged communications regarding that investigation. In *Callahan*, this Court considered a motion to compel privileged documents regarding defendant's investigation into plaintiff's trades relied on by the defendant as the reason for its suspension and termination of the defendant. *Id.* The plaintiff, like Yipit here, argued that the defendant was using the investigation as both a "shield and a sword." *Id.* The court concluded that fairness did not "require disclosure of the privileged documents relating to that investigation in order for the plaintiff to have a reasonable opportunity to meet its burden and answer the defendant's evidence." *Id.* at *1-2. The court explained that the plaintiff's argument regarding whether the investigation was in "good faith" did not "focus on the relevant sense of that phrase." *Id.* As the court explained "[a] party's assertion of a 'good faith' defense may indeed result in a waiver of its privilege—when the defense is a 'good faith belief *in the lawfulness of [its] conduct.*'" *Id.* (emphasis in original) (quoting *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 460 (S.D.N.Y. 2019)). "However, '[n]ot every assertion of good faith implicates the legal understanding of the party making the claim.'" *Id.* (quoting *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93-CV-1317, 1996 WL 173138, at *3-4 (S.D.N.Y. Apr. 12, 1996) (finding no waiver of privilege where defendant's affirmative defense was based on defendant's knowledge of facts, not knowledge of law)) (additional citations omitted). The Court concluded that HSBC was not "relying on its 'good faith' investigation in a sense that would trigger a privilege waiver," rather "it was arguing that the investigation provided the *factual* basis for Plaintiff's termination, not that it provided a *legal* mandate or justification. The only sense in which HSBC contends that its investigation was in 'good faith' is in the sense that it was what it purported to be —*i.e.*, that it was a bona fide investigation into Plaintiff's trading and conduct." *Id.*

5

      Similarly here, M Science has not relied on its investigation to justify the lawfulness of its conduct. Nor has M Science relied on or put into issue the sufficiency or reasonableness of its investigation either as a defense to Yipit's claims, or as a response to Yipit's discovery requests. Indeed, M Science's Answer does not assert any defense based on the investigation. In opposing Yipit's request for a preliminary injunction, which has already been decided, M Science pointed to its various remedial measures, including the fact of its investigation, but not the investigation's "sufficiency" or "reasonableness," as one of several reasons why Yipit could not show the requisite irreparable harm necessary for a preliminary injunction. Thus, the relevance of M Science's investigation in this case is merely as a background factual event that took place. To the contrary, it is Yipit who has attempted to put its own concerns regarding the sufficiency of M Science's investigation into issue in this case. Indeed, as Yipit acknowledged in its letter motion, it was Yipit who raised its own "concerns" regarding M Science's investigation during the hearing on its motion for preliminary injunction. Dkt. 289, p. 5.

      Further, contrary to Yipit's assertions, M Science has not "relied on the results of its internal investigation to justify" a limited production in response to Yipit's discovery requests. Dkt. 289, p. 4. Rather, in response to several of Yipit's discovery requests seeking discovery regarding Yipit's underlying allegations in this matter, M Science appropriately referenced its investigation by stating that, with respect to several of M Science's requests, it had already produced responsive documents – the documents that M Science had located and voluntarily returned to Yipit as a result of M Science's investigation into Yipit's allegations regarding Emmett. *See* Dkt. 289-2, at RFP Nos. 6, 8, 12, and 22. However, M Science also agreed to produce additional responsive documents located during the litigation. *Id.*

      Moreover, like in *Callahan*, M Science has produced responsive, non-privileged documents relating to its investigation and remedial measures and, as discussed in further detail below, Yipit "will also be able to conduct depositions relating to the investigation." *Callahan*, 2025 WL 1404492, at *2.

      Similarly, *In re Woolworth Corp. Sec. Class Action Litig.*, No. 94 CIV. 2217 (RO), 1996 WL 306576, at *2 (S.D.N.Y. June 7, 1996), involved a motion to compel outside counsel to turn over their internal notes and memoranda regarding an internal investigation conducted for Woolworth. Like Yipit here, the plaintiffs argued that even if the attorney-client privilege applied, it was waived when Woolworth published the Special Committee's Report and that the law firm was using the privilege as both a sword and a shield, to disclose some communications and conceal others. *Id.* In rejecting the plaintiffs' argument, the Court distinguished between the communications between attorney and client, which are protected by the privilege, and the underlying relevant facts upon which those communications are based, which are not.

      Here, as discussed above, M Science is not relying upon the investigation, including its "sufficiency" or "reasonableness" as a defense. Unlike the *Farragher/Ellerth* defense addressed in cases cited by Yipit (*see. e.g.*, *McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240, 244 (E.D.N.Y. 2001)), there is no recognized legal defense to a trade secret claim based on the sufficiency of an investigation and M Science does not purport to assert one. Moreover, as this court recognized in *Callahan*, by raising a *Farragher/Ellerth* defense in an employment

discrimination case, "an employer places the reasonableness of the investigation itself directly in issue – thus often waiving privilege given the need to examine how the investigation was supervised and conducted." 2025 WL 1404492, at *2 (citations omitted). Here, however, the sufficiency, insufficiency, reasonableness or unreasonableness of M Science's investigation has no pertinence to the case. For example, if M Science's counsel conducted the most thorough investigation of all time, but M Science thereafter used Yipit's trade secrets, Yipit would still claim damages. In contrast, if M Science's investigation was shoddy, but the underlying facts dictate that no trade secrets were ever used by M Science to divert business from Yipit, then Yipit would still have no damages. The questions before the Court simply have nothing to do with the sufficiency of the investigation. They are premised on what information was disclosed by Mr. Emmett to M Science; whether that information was a trade secret; whether and to what extent that information was used or disclosed by anyone at M Science; and what damage, if any, was caused by the use or disclosure of that information. Those underlying facts are discoverable through other discovery requests served by Yipit and Yipit should be focusing on those issues and not on seeking to compel privileged documents regarding M Science's investigation.

In *Woolworth*, the Court also found that "[s]trong public policy considerations also militate against finding a waiver of the privilege. A finding that publication of an internal investigative report constitutes waiver might well discourage corporations from taking the responsible step of employing outside counsel to conduct an investigation when wrongdoing is suspected." 1996 WL 306576, at *2. Here, as in *Woolworth*, public policy cuts against finding a waiver of privilege, as doing so would discourage a corporation, such as M Science, from investigating allegations of misappropriation regarding a recent hire and seeking to cooperate and return any allegedly misappropriated information. Indeed, it was Yipit who demanded that M Science "investigate" its allegations regarding Emmett. M Science did so in a good faith effort to avoid litigation. However, M Science would not have cooperated with Yipit's demand if it knew that Yipit would later seek to invalidate the privilege that applied to the investigation, and demand the production of "All Documents and Communications" regarding the investigation, regardless of privilege.

Essentially, what Yipit seeks with its letter motion, is akin to discovery on discovery, which is "collateral to the relevant issues" and "disfavored absent a showing of abuse." *Williams v. NYC Bd. of Elections*, No. 23-CV-5460 (AS) (KHP), 2024 WL 3567395, at *4 (S.D.N.Y. July 29, 2024) (citations and quotations omitted). Thus, a party seeking such discovery on discovery must "provide an adequate factual basis to justify the discovery, and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Id.* Yipit is free to serve M Science discovery on the underlying facts of this case, and to propose relevant search terms for M Science to run in response to those requests. However, Yipit has not provided any basis to justify such "discovery on discovery" here.

We also note that the caselaw Yipit relies on for this argument in its letter motion is factually distinguishable. For example, in *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991), a criminal case where the defendant had argued that he thought his actions were legal, the Second Circuit found that the defendant's argument put his knowledge of the law and the basis for his understanding of what the law required in issue, making "his conversations with counsel

Hon. Robyn F. Tarnofsky
July 23, 2025

regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." Here there is no such argument regarding M Science's knowledge or intentions.

*Felder v. Warner Bros. Discovery*, 2025 WL 1718098, at *16, an employment retaliation case, involved the employer's defense based on its "alleged good faith belief" that the plaintiff had engaged in misconduct warranting his termination. Moreover, in *Felder*, the employer had "disclosed the purportedly privileged communications themselves, by describing what witnesses 'admitted,' 'said,' 'claimed,' and 'reported' to [its] investigators," and thus the court concluded that the employer had waived privilege and work product protection as to the investigation notes or summaries of witness. *Id.* at *18-19. Here, however, M Science has not put any "good faith belief" in issue. Indeed, as this Court recognized in *Felder*, it "is not to say that any time a litigant makes factual assertions based on an internal investigation, it has put those facts 'at issue' and waived privilege. That is not the law. In most cases, the disputed facts can be determined based on non-privileged evidence, including witness testimony at depositions and trial." *Id.* Nor has M Science disclosed any purportedly privileged communications by describing what was said in any communications relevant to its investigation.

*Chelsea Hotel Owner LLC v. City of New York*, No. 1:21-CV-03982 (ALC) (RWL), 2025 WL 880530, at *6–7 (S.D.N.Y. Mar. 21, 2025), *reconsideration denied*, No. 1:21-CV-03982 (ALC) (RWL), 2025 WL 1603918 (S.D.N.Y. June 6, 2025), involved claims alleging violations of the plaintiffs' substantive due process rights. The court found that the City had contended it acted reasonably, including by conducting a review of the hotel's status following an inquiry from a tenant, thus privilege was waived because the defendant had put the issue of the reasonableness of its investigation into the hotel's status forward. As set forth above, M Science has not put the reasonableness of its investigation in issue here.

Finally, in *In re Omnicom Grp., Inc. Sec. Litig.*, 233 F.R.D. 400, 413 (S.D.N.Y. 2006), the plaintiffs argued that the defendants had waived the attorney client privilege by relying on an advice of counsel defense and an advice of accountants' opinion defense where the accountants relied on the attorneys' letters, which is not the case here. However, the defendants asserted no intention to assert a defense based on reliance on the opinions of counsel, but only on the reliance on the opinions of two accounting firms. This Court then found that the record did not support plaintiffs' waiver arguments as it was not clear in what respect and to what extent the accountants had relied on the opinions of counsel.

### IV. RFP No. 13's Request for "All Documents and Communications" is Overbroad and Unreasonable.

In addition to the fact that Yipit's letter motion should be denied as to RFP No. 13 because it seeks privileged documents and communications, Yipit's letter motion should also be denied because RFP No. 13 is inherently overbroad and unreasonable because it seeks "All Documents and Communications" regarding M Science's investigation. Indeed, as this court has consistently found, discovery requests for "all" documents and communications are clearly overbroad and unreasonable. *See e.g., Michael Kors, L.L.C. v. Su Yan Ye,* No. 1:18-CV-2684 (KHP), 2019 WL

Hon. Robyn F. Tarnofsky
July 23, 2025

1517552, at *3 (S.D.N.Y., Apr. 8, 2019)(finding document requests "clearly overbroad and unreasonable" because they sought "all documents concerning or pertaining to various listed topics"); *see also Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB)(HBP), 2016 WL 616386, at *15 (S.D.N.Y. Feb. 16, 2016); *Gropper v. David Ellis Real Estate, L.P*, No. 13 CV 2068 ALC JCF, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (finding request for "any and all" documents "overbroad"). Therefore, if granted at all (and it should not be), RFP No. 13 should be limited to specific non-privileged documents or information, the production of which is proportional to the needs of the case. For example, M Science should never be required to produce its communications with or between its in-house and/or outside counsel regarding its legal impressions and strategy related to the investigation.

### V. Interrogatory Nos. 12 and 13 Are Beyond the Scope of Local Rule 33.3.

Interrogatory Nos. 12 and 13 are beyond the scope of permissible interrogatories pursuant to Local Rule 33.3, which restricts interrogatories to those "seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature," and otherwise permits interrogatories only "if they are a more practical method of obtaining the information sought than a request for production or a deposition," or "if ordered by the Court." S.D.N.Y. Local R. Civ. P. 33.3.

Here, there is no order of the Court suggesting that Local Rule 33.3 does not apply in this case. Furthermore, an interrogatory is not a "more practical method of obtaining information sought" than a deposition. To the contrary, the discovery sought by Interrogatory Nos. 12 and 13, which ask M Science to "describe in detail," is more properly the subject of a deposition. Indeed, Yipit has noticed a deposition for Joseph Napoli in this matter, which is currently scheduled to take place on August 20, 2025. *See* Dkt. 287. In addition, Yipit has noticed a Rule 30(b)(6) deposition of M Science, including several topics related to M Science's investigation. The parties are currently in the process of scheduling that Rule 30(b)(6) deposition. While, again, many communications related to M Science's investigation are privileged, during these depositions, Yipit will be able seek and obtain non-privileged discovery regarding M Science's investigation. Finally, given the expedited nature of discovery in this case, it is most efficient to seek this information through these depositions, so that M Science can focus its time and resources on reviewing and producing documents in response to Yipit's RFPs, rather than in response to an interrogatory.

Respectfully submitted,

Andrew J. Shapren

9