# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

YIPIT, LLC d/b/a YipitData,

               Plaintiff,

      v.

ZACHARY EMMETT,
ALEXANDER PINSKY,
VALENTIN RODUIT, MICHAEL
MARRALE; M SCIENCE LLC,
and JOHN DOES 1-10,

               Defendants.

Case No. 1:24-cv-07854

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## M SCIENCE LLC'S MOTION TO DISMISS COUNTERCLAIM

BUCHANAN INGERSOLL & ROONEY PC
Andrew J. Shapren (admitted *pro hac vice*)
Anne E. Kozul (admitted *pro hac vice*)
50 South 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
Telephone: (215) 665-3853
andrew.shapren@bipc.com

Stephen W. Kelkenberg
(NY Reg. No. 4096269)
501 Grant Street, Suite 200
Pittsburgh, Pennsylvania 15219-4413
Telephone: (716) 725-4349
Facsimile: (412) 562-1041
stephen.kelkenberg@bipc.com

*Attorneys for M Science LLC and Michael Marrale*

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................... 1

    I.      Pinsky's Counterclaim is Not Timely and He is Incapable of Providing the Requisite "Good Cause" Justification for Failing to Comply with the Court's Order.................................................................................................................. 1

    II.    Pinsky's Status as Alleged Wrongdoer Precludes His Common Law Claim for "Implied" Indemnification as a Matter of New York Law. .............................. 3

    III.   Pinsky's Stipulated Judgment Precludes His Indemnification Claims as a Matter of New York Public Policy. ......................................................................... 5

    IV.   Pinsky is Not a "Covered Person" under the LLC Agreement. ............................ 7

    V.    The LLC Agreement Is Not a Safe Harbor for Pinsky's Indemnification Claim. ................................................................................................................... 8

CONCLUSION.................................................................................................................. 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alta Berkeley VI C V. v. Omneon, Inc.*,
    41 A.3d 381 (Del. 2012) ...................................................................................................8

*Armstrong v. McAlpin*,
    699 F.2d 79 (2d Cir.1983)...............................................................................................6

*Austro v. Niagara Mohawk Power Corp.*,
    66 N.Y.2d 674 (1985) ......................................................................................................7

*Barbagallo v. Marcum LLP*,
    2012 WL 1664238 (E.D.N.Y. May 11, 2012) ................................................................6

*De Heras v. Avant Gardner, LLC*,
    224 A.D.3d 883 (2d Dep't 2024) .....................................................................................4

*Energy Partners, Ltd. v. Stone Energy Corp.*,
    2006 WL 2947483 (Del. Ch. Oct. 11, 2006) ...................................................................8

*Enzymotec Ltd. v. NBTY, Inc.*,
    754 F. Supp. 2d 527 (E.D.N.Y. 2010) .............................................................................2

*Esteva v. Nash*,
    55 A.D.3d 474 (1st Dep't 2008) ......................................................................................4

*Geiger v. Am. Tobacco Co.*,
    181 Misc. 2d 875 (Sup. Ct. Queens Cnty. 1999),
    *aff'd*, 277 A.D.2d 420 (2d Dep't 2000) ..........................................................................6

*Glaser v. Fortunoff of Westbury Corp.*,
    71 N.Y.2d 643 (1988) ......................................................................................................4

*Goodman v. Port Auth. of New York & New Jersey*,
    850 F. Supp. 2d 363 (S.D.N.Y. 2012)..............................................................................7

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d 413 (1996) ......................................................................................................6

*Lincoln v. Potter*,
    418 F. Supp. 2d 443 (S.D.N.Y. 2006)..............................................................................3

*Lu v. Jackson Ht. Roosevelt Dev. II, LLC*,
    231 A.D.3d 1198 (2d Dep't 2024) ...................................................................................4

*Mas v Two Bridges Assoc.*,
   75 N.Y.2d 680 (1990) ................................................................................4

*Modular Devices, Inc. v. Alcatel Alenia Space Espana*,
   2010 WL 3236779 (E.D.N.Y. Aug. 12, 2010)...............................................6

*In re Part 60 RMBS Put-Back Litig.*,
   195 A.D.3d 40 (1st Dep't 2021) ...........................................................3, 4

*Paulsen v. Stifel, Nicolaus & Co.*,
   2019 WL 2415213 (S.D.N.Y. June 4, 2019) ...........................................7, 8

*Rent-A-Ctr., Inc. v. 47 Mamaroneck Ave. Corp.*,
   215 F.R.D. 100 (S.D.N.Y. 2003) .............................................................3

*Rosado v. Proctor & Schwartz*,
   66 N.Y.2d 21 (1985) ...............................................................................5

*Santoro v. Poughkeepsie Crossings, LLC*,
   180 A.D.3d 12 (2d Dep't 2019) ...............................................................4

*Thomas v. ConAgra Foods*,
   2022 WL 3227644 (W.D.N.Y. Apr. 21, 2022), *report and recommendation*
   *adopted sub nom. Thomas v. ConAgra Foods, Inc.*, 2022 WL 3699408
   (W.D.N.Y. Aug. 26, 2022)......................................................................2

*Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*,
   109 A.D.2d 449 (1st Dep't 1985) ..............................................................5

*Walt Disney Co. Deriv. Lit.*, 906 A.2d 27, 67 (Del. 2006) .............................9

**Rules**

Fed. R. Civ. P. 13 ......................................................................................2, 3

M Science respectfully submits this reply in further support of its Motion to Dismiss Alexander Pinsky's counterclaim.

## ARGUMENT

**I.    Pinsky's Counterclaim is Not Timely and He is Incapable of Providing the Requisite "Good Cause" Justification for Failing to Comply with the Court's Order.**

Pinsky does not deny that his counterclaim is untimely. Nor could he. As acknowledged in his Opposition to M Science's Motion, the Court's May 8, 2025 Order made clear that, except upon a showing of good cause, "[n]o additional parties may be joined or cause of action asserted after May 23, 2025." Dkt.335, Pinsky Opp'n Br. ("POB") at 3 (citing Court's Order, Dkt.229).[1]

There is no disputing that Pinsky did not file his counterclaim against M Science until June 13th, well after the Court-ordered deadline. Dkt.259. Instead, Pinsky's response is that he could not have complied with the Court's directive because M Science waited to file its crossclaim until May 23rd, the last day of the filing period. The thin pretense that Pinsky offers is that because his claim is denominated a "***counter***claim," it necessarily follows that he could not have complied with the deadline by filing it the very same day M Science filed its claim. POB at 5.

Pinsky's semantic argument is a complete non sequitur. The filing of Pinsky's counterclaim was in no way contingent upon M Science having first asserted its own claim for contribution. There was nothing to prohibit Pinsky from properly designating and filing his claim for indemnification as a "***cross***claim" or even a "***third-party*** claim" on or before the Court-ordered deadline (which he chose not to do). That is particularly true here since, as Pinsky concedes in his

---

[1] The deadlines within the Order are sufficient, on their face, to rebut Pinsky's repeated suggestion that, "[p]rior to M Science bringing a claim against [him], Pinsky was not under any obligation to assert an indemnification claim in this matter or at this time." POB at 6; *id.* at 3 (stating same).

opposition, his "**_simple counterclaim against his former employer_" _is "an obvious one._**"  POB at 1, 5 (emphasis added).  And he makes no effort to prove his diligence by arguing that events transpiring after the Court's deadline gave rise to his claim or provided the requisite good cause to justify his late filing (because there are none).  _Thomas v. ConAgra Foods_, 2022 WL 3227644, at *3 (W.D.N.Y. Apr. 21, 2022), _report and recommendation adopted sub nom.  Thomas v. ConAgra Foods, Inc._, 2022 WL 3699408 (W.D.N.Y. Aug. 26, 2022) ("A party cannot demonstrate diligence where 'the proposed amendment rests on information the party knew, or should have known, in advance of the deadline.'"); _Enzymotec Ltd. v. NBTY, Inc._, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) ("The good cause standard is not satisfied when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'").

Pinsky is also mistaken when he intimates that his counterclaim is "likely" compulsory, or that FRCP 13 operates as a panacea for his untimely filing.  As to the first issue, Pinsky's counterclaim is not "compulsory" within the meaning of FRCP 13 because it does not "arise[] out of the transaction or occurrence that is the subject matter of [M Science's] claim."  Fed. R. Civ. P. 13.  The Court need look no further than the claims themselves.  M Science's contribution claim stems from the assertion that—while it denies any liability to Yipit—if for some reason liability were ultimately found, _then that liability would be the result of the misconduct of certain former employees, including Pinsky_.  Dkt.234 (Crossclaim) at 1 ¶ 2.  By contrast, Pinsky's counterclaim _seeks reimbursement for the attorneys' fees and expenses he has incurred defending himself_ in this litigation—not the monetary liability that might exist in the wake of his alleged unlawful conduct.[2]

---

[2] POB at 11 ("[T]he Consent Judgment . . . narrows the indemnification claim to attorneys' fees and expenses only.").

In fact, Pinsky's opposition concedes that "monetary payment" to Yipit is no longer an issue in light of his unilateral decision to settle Yipit's claims over M Science's objections.  POB at 3.

Moreover, even if Pinsky's counterclaim were truly "compulsory," he has not cited any authority suggesting that FRCP 13 upstages the Court's ability to control its own docket or establish mandatory filing deadlines.  POB at 5-6; *Rent-A-Ctr., Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 103 (S.D.N.Y. 2003) ("Scheduling orders in general, and deadlines for amendment specifically, are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed.").  Nor has he cited a single case suggesting that the compulsory nature of such a claim obviates his affirmative obligation to make a "good cause" showing for failing to comply with the Court's Order.  POB at 5-6; *but see Lincoln v. Potter*, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006) ("If [a] party was not diligent, the [good cause] inquiry should end.").

Pinsky's counterclaim is untimely.  His red herring argument about the supposed compulsory nature of his claim does not change the analysis, nor should it deter the Court from reaching the proper conclusion here dismissing Pinsky's counterclaim.  Pinsky has not demonstrated that the deadlines set by the Court could not have been "reasonably met despite [his] diligence[.]"  *Rent-A-Center Inc.*, 215 F.R.D. at 104.  He has thus failed to make a "good cause" showing to support his untimely claim or defeat M Science's motion to dismiss, which should be granted in its entirety.

## II.    Pinsky's Status as Alleged Wrongdoer Precludes His Common Law Claim for "Implied" Indemnification as a Matter of New York Law.

"Common-law indemnification is an equitable remedy."  *In re Part 60 RMBS Put-Back Litig.*, 195 A.D.3d 40, 54 (1st Dep't 2021).  "It is a concept which permits the shifting of a loss because failure to do so would result in the unjust enrichment of one party at the expense of

another." *Id.*, 195 A.D.3d at 54 (citing *Mas v Two Bridges Assoc.*, 75 N.Y.2d 680, 690 (1990)). "'[T]he predicate of common-law indemnity is vicarious liability **without actual fault** on the part of the proposed indemnitee[;] that is, the defendant's role in causing the plaintiff's injury is solely passive, and thus its liability is purely vicarious.'" *Lu v. Jackson Ht. Roosevelt Dev. II, LLC*, 231 A.D.3d 1198, 1200 (2d Dep't 2024) (emphasis added) (citing *De Heras v. Avant Gardner, LLC*, 224 A.D.3d 883, 884 (2d Dep't 2024) (dismissing cause of action for common-law indemnification) (quoting *Santoro v. Poughkeepsie Crossings, LLC,* 180 A.D.3d 12, 16-17 (2d Dep't 2019) ("Conversely, where a party is held liable at least partially because of its own negligence, contribution against other culpable tort-feasors is the only available remedy.") (quoting *Glaser v. Fortunoff of Westbury Corp.,* 71 N.Y.2d 643, 646 (1988)))).  As such, "[a] party sued solely for its own alleged wrongdoing, rather than on a theory of vicarious liability, ***cannot assert a claim for common law indemnification***" in New York.  *Esteva v. Nash*, 55 A.D.3d 474, 475 (1st Dep't 2008) (emphasis added) (dismissing third-party claim for common-law indemnification where complaint "did not propound any theory that defendants were vicariously liable to plaintiffs by dint of third-party defendant['s] actions").

Pinsky's response to this established body of law is twofold.  He first emphasizes the bland (and uncontested) observation that New York courts have recognized the existence of implied indemnification claims under some circumstances.  POB at 10.  Next, he urges this Court to allow his common law indemnification claim to proceed because, according to him, M Science's motion requires "factual findings" forbidden at this stage of the proceeding.  *Id.* at 10-11.

Neither of Pinsky's arguments are sufficient to sustain his claim.  For starters, it is irrelevant (and, as noted above, M Science does not dispute) that New York courts have recognized the theoretical possibility of pleading an implied indemnification claim.  What is relevant—and, more

importantly, controlling—is that that same body of New York caselaw expressly forbids Pinsky's attempt to pursue a common law indemnification claim where the underlying allegations pertain to his own wrongful conduct—which they clearly do. *Rosado v. Proctor & Schwartz,* 66 N.Y.2d 21, 24-25 (1985) ("A party who has settled and seeks what it characterizes as indemnification thus ***must show that it may not be held responsible in any degree***") (emphasis added); *Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.,* 109 A.D.2d 449, 453 (1st Dep't 1985) ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.").

M Science's motion does not require the Court to make factual findings at all. As with any pleadings motion, M Science has simply and properly asked the Court to engage in a routine examination of Yipit's complaint enroute to the inevitable determination that Pinsky's own alleged wrongdoing permeates Yipit's claims. *See e.g.,* Dkt.84 (Second Amended Complaint) ¶¶ 1-2, 5-6, 8, 11, 52-54, 59, 74, 78-79, 81, 84, 89, 97-98, 106, 109-111, 116, 124, 128, 136, 144-145, 161, 165-166, 172, 176-177, 182-188, 201-204, 220, 224, 229, and Wherefore ¶ III. There are no allegations in Yipit's complaint attempting to hold Pinsky vicariously liable for the actions of M Science. The absence of such allegations, coupled with Pinsky's affirmatively alleged misconduct, vitiate his effort to obtain common law indemnification, and his counterclaim for such relief should be dismissed with prejudice.

III.   **Pinsky's Stipulated Judgment Precludes His Indemnification Claims as a Matter of New York Public Policy.**

At page 10 of his brief, Pinsky asserts that because his Settlement Agreement with Yipit does not address "whether he acted in good faith," or "acted . . . in what he believed was the best interest of M Science[,]" the Agreement has no impact on his counterclaim. POB at 10. Pinsky's

argument betrays a misunderstanding of the scope and legal implications of his own Stipulated Judgment under New York law.

Pinsky has now accepted liability, over M Science's objection, for each of the Counts alleged against him in Yipit's Second Amended Complaint.  Dkt.301 (Stipulated Judgment and Permanent Injunction) at 2 ¶ 1.  Among those Counts are:  (i) Count 4, tortious interference with contract; (ii) Count 6, aiding and abetting breach of fiduciary duty; and (iii) Count 9, for conspiracy—all of which are intentional torts under New York law; or, as in the case of the conspiracy count, require an intentional tort as a predicate to liability.[3]  Dkt.84 (Second Amended Complaint, Count 4) at 74-75 ¶ 184 ("Mr. Pinsky intentionally and improperly facilitated Mr. Emmett's breach of the agreement by soliciting Yipit's Proprietary Information from Mr. Emmett, including by requesting information on individual customers and by requesting a 'general guide' over Facebook."); *id.* (Count 6), at 78 ¶ 203 ("Mr. Pinsky knowingly and repeatedly induced Mr. Emmett to breach his fiduciary duties to Yipit . . . ."); *id.* (Count 9), at 82 ¶ 224 ("Mr. Pinsky agreed

---

[3] *Barbagallo v. Marcum LLP*, 2012 WL 1664238, at *7 (E.D.N.Y. May 11, 2012) (recognizing that "the tortious interference and aiding and abetting a breach of a fiduciary duty claims are intentional torts[,]" and that the purported indemnitee was not entitled to indemnification for either claim) (citing *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 424 (1996)); *Modular Devices, Inc. v. Alcatel Alenia Space Espana*, 2010 WL 3236779, at *5 (E.D.N.Y. Aug. 12, 2010) *Geiger v. Am. Tobacco Co.*, 181 Misc. 2d 875, 882 (Sup. Ct. Queens Cnty. 1999), *aff'd*, 277 A.D.2d 420 (2d Dep't 2000) ("[A] conspiracy must rest on an intentional tort.").

to engage, and did engage, in a conspiracy to undermine Yipit's business, misappropriate its trade secret and proprietary information, and use that information for the benefit of . . . himself.").

It is settled New York law that "indemnification agreements are unenforceable as violative of public policy to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury." *Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 390 (S.D.N.Y. 2012) (dismissing common law and contractual indemnification claims) (citing *Austro v. Niagara Mohawk Power Corp.,* 66 N.Y.2d 674, 676 (1985)).  As such, in addition to the reasons stated in Section II. above, and Section IV. below, Pinsky's effort to obtain indemnification from M Science based on his own alleged intentional misconduct violates New York public policy, and his counterclaim for either common law or contractual indemnification must be dismissed for this independent reason.

**IV.    Pinsky is Not a "Covered Person" under the LLC Agreement.**

Pinsky cannot plead his way into an indemnification claim under M Science's LLC Agreement.  Assuming arguendo that New York public policy does not preclude coverage for Pinsky's alleged intentional misconduct (which it does, *see* Section III.), Pinsky is not a "Covered Person" within the meaning of the LLC Agreement.  "Covered Person" is defined to mean "a manager or an officer of the Company."  Dkt.319-1 at 35 (Article 12, Definitions).  As noted in M Science's opening brief, Pinsky is neither.  Section 6.3 is the only section of the LLC Agreement that identifies how "officers" are to be designated.  Dkt.319-1 at 17, § 6.3 ("Officers").  That section makes clear that "officers" must be "designated by the Board to act in the name of the Company with such authority as may be delegated . . . by the Board." *Id.*  Pinsky has not pled and cannot plead, in good faith, that he was designated by M Science's Board to act as an officer of the company with a specific delegation of authority.  *Paulsen v. Stifel, Nicolaus & Co.*, 2019 WL 2415213, at *6 (S.D.N.Y. June 4, 2019) (dismissing indemnification claims, finding that while the

terms "director" and "officer" are "not defined in . . . the Indemnification section, nor are they ever explicitly defined elsewhere in the By-Laws[,]" reading the By-laws as a whole, "[t]hese terms do not apply to general employees whose position description includes either 'director' or 'officer[,]'" and refusing request for discovery) (citing *Energy Partners, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *13 (Del. Ch. Oct. 11, 2006)).

Pinsky's protest in his opposition brief that he was a member of the "Executive Committee" changes nothing. Section 6.2 of the LLC Agreement makes clear that both "officers ***and employees***" can be appointed to the Executive Committee. Dkt.319-1 at 17, § 6.2 (emphasis added).

Finally, even if Pinsky could somehow plead a factual basis for "Covered Person" status (which he cannot), the LLC Agreement plainly establishes that the indemnification it potentially affords is entirely permissive and subject to the Board of Managers' "sole discretion." Dkt.319-1 at 22, § 8.2. Here again, Pinsky has not pled and cannot plead in good faith that M Science's Board took discretionary action conferring indemnity upon him as an M Science employee.

Pinsky cannot plead a good faith basis for Covered Person status and his claim for contractual indemnification must be dismissed based on the LLC Agreement's unambiguous language and scope. *Paulsen*, 2019 WL 2415213, at *6 (recognizing that terms are not "'ambiguous merely because the parties dispute what [they] mean. To be ambiguous, a disputed . . . term must be fairly or reasonably susceptible to more than one [meaning].'") (citing *Alta Berkeley VI C V. v. Omneon, Inc.*, 41 A.3d 381, 386 (Del. 2012)).

**V.    The LLC Agreement Is Not a Safe Harbor for Pinsky's Indemnification Claim.**

As noted in Section III., Pinsky's stipulation to liability for the six causes of action alleged in Yipit's complaint—each of which relate to Pinsky's own alleged intentional misconduct—cannot form the proper basis for an indemnification claim in light of New York public policy. That

same stipulation likewise forecloses, as a matter of law, Pinsky's oxymoronic assertion that although he engaged in intentional misconduct vis-à-vis Yipit, he only did so in "good faith" and with M Science's "best interests" in mind, as would be required to invoke the indemnity protections of M Science's LLC Agreement.  Dkt.319-1 at 27, § 8.2(a); *Walt Disney Co. Deriv. Lit.*, 906 A.2d 27, 67 (Del. 2006) (explaining that acts "which involve intentional misconduct or a knowing violation of law" are examples of bad faith conduct under Delaware law).  Pinsky has not and cannot plead a basis for indemnification under the LLC Agreement's "good faith" and "best interest" requirements, providing yet another basis for dismissing his counterclaim for contractual indemnification under the LLC Agreement.

## CONCLUSION

Pinsky is not entitled to indemnification from M Science as a matter of law.  Pinsky's Counterclaim against M Science should be dismissed with prejudice.

Dated:  September 3, 2025

Respectfully submitted,

*/s/ Andrew J. Shapren*
**BUCHANAN INGERSOLL & ROONEY PC**
Andrew J. Shapren (admitted *pro hac vice*)
Anne E. Kozul (admitted *pro hac vice*)
50 South 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
Telephone: (215) 665-3853
andrew.shapren@bipc.com
anne.kozul@bipc.com

Stephen W. Kelkenberg
(NY Reg. No. 4096269)
501 Grant Street, Suite 200
Pittsburgh, Pennsylvania 15219-4413
Telephone: (716) 725-4349
stephen.kelkenberg@bipc.com

*Attorneys for M Science LLC and Michael Marrale*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Paragraph II(D) of the Court's Individual Practices, I hereby certify that this brief complies with Judge Koeltl's formatting rules, and that the total number of words in this memorandum of law, excluding the cover page, table of contents, table of authorities, signature line, and certification of compliance is 2795.

*/s/ Andrew J. Shapren*